STATE OF NORTH CAROLINA v. DAVID CARL CARTWRIGHT

No. COA04-1688

(Filed 16 May 2006)

**1. Sexual Offenses— first-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree sexual offense under N.C.G.S. § 14-27.4(a)(2)(a), because: (1) in the light most favorable to the State, the seventy-six-year-old victim testified that defendant penetrated her anally; (2) the emergency room doctor testified that it was possible for a person to be penetrated anally without showing signs of trauma due to the physiology of the anus; (3) a victim may not recall anal penetration due to the fear experienced during such an assault; and (4) even though the victim presented conflicting testimony regarding whether she recalled anal penetration, there was substantial evidence that defendant engaged in a sexual act of anal penetration with the victim, against the victim's will, and by employing the knife as a dangerous or deadly weapon.

**2. Kidnapping— first-degree—asportation of victim—motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motion to dismiss the charge of first-degree kidnapping because the confinement, restraint or removal of the victim within her home constituted an inherent element of the felonies of rape and armed robbery with which defendant was also charged.

**3. Rape— first-degree—instruction—knife as a dangerous weapon**

The trial court did not commit plain error by instructing the jury that a knife is a dangerous or deadly weapon as a matter of law for a first-degree rape charge, because: (1) in light of the entire record, particularly the victim's testimony that she knew it

STATE v. CARTWRIGHT

[177 N.C. App. 531 (2006)]

was a knife that defendant took from his pocket, that she asked him not to hurt her upon seeing the knife, and that she was scared, the jury likely would have found that the victim reasonably believed the knife to be a dangerous or deadly weapon; and (2) even if the trial court's instruction was erroneous, it did not have a probable impact on the jury's determination of guilt.

Appeal by defendant from judgments entered 18 March 2004 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 21 September 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General David J. Adinolfi, II, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

JACKSON, Judge.

David Carl Cartwright ("defendant") appeals from jury verdicts finding him guilty of first-degree kidnapping, armed robbery, first-degree rape, breaking and entering, and first-degree sexual offense returned 18 March 2004 in Wayne County Superior Court.

All of defendant's charges arise from an incident occurring 14 June 2003. At trial, the State's evidence tended to show that the victim, a seventy-six-year-old widow, was standing in her kitchen when she saw papers in her carport that were not present the preceding night. From her kitchen, she unlocked and opened the storm door, reached out, and started to step out of the house onto the first step. Before her foot touched the first step, defendant grabbed her arm and pushed her back into the kitchen. The victim began to scream and was extremely frightened. Defendant closed the door and pulled a knife out of his pocket. The victim testified that she did not get a good look at the knife and did not see an open blade. Defendant demanded money from the victim, and the victim told defendant that she only had one dollar. She asked him not to hurt her, and defendant put the knife back in his pocket. Defendant proceeded to attempt to choke the victim with a towel from the kitchen, and the victim resisted.

During the struggle in the kitchen, defendant ripped the victim's pajama top off of her person. The struggle continued through a hallway and into the den, where the victim was able to free herself from the towel around her neck. Defendant knocked the victim to the floor

of the den, and the victim grabbed a picture frame from a table and struck defendant in the head with it, causing the frame's glass to break. Subsequently, defendant attempted to smother her with a small pillow from the couch, and the victim struggled and prevented defendant from smothering her. While in the den, defendant pulled off the victim's pajama bottoms and inserted his penis into her vagina. Defendant asked the victim if it felt good and she responded that it did not.

After defendant assaulted the victim in the den, he demanded money from her. The victim arose from the den floor, walked down a hallway to her bedroom with defendant following, and retrieved one dollar. She gave the dollar to defendant, and defendant left the victim's house with the victim's torn pajamas, the towel and the picture frame. The victim called the police, and dressed in shorts and a t-shirt.

At trial, testimonial and physical evidence varied regarding the specifics of the sexual assault. On direct examination, the prosecutor asked the victim if defendant penetrated her anywhere besides her vagina to which she responded, "Not much." Later, during direct examination, the prosecutor asked the victim if defendant had penetrated her anally with his penis and she answered "Well, yes." The victim explained that it "didn't feel right" and stated, "So I don't know, it didn't feel right to me." In contrast, on cross-examination, the victim stated several times that defendant had not penetrated her anally.

Physical evidence from a rape kit collected at the hospital immediately following the attack showed the presence of semen on a swab taken from the victim's rectum. The doctor who conducted an examination of the victim at the emergency room immediately after the incident testified that he observed a scratch on the victim's vaginal wall, but he did not observe any indications of trauma to the victim's rectal area. The doctor testified that it was possible for a person to be penetrated anally without showing signs of trauma due to the physiology of the anus, and a sexual assault victim may not remember being penetrated anally as a result of fear during the event.

At the close of the State's evidence, and, again at the close of all evidence, defendant made motions to dismiss the charges for insufficient evidence. Both motions were denied and defendant was convicted of all charges.

STATE v. CARTWRIGHT

[177 N.C. App. 531 (2006)]

On appeal defendant assigns as error: (1) the trial court's denial of his motions to dismiss the charges of first-degree sexual offense and first-degree kidnapping for insufficient evidence; (2) his conviction on both first-degree kidnapping and rape as the commission of the rape was the basis for a required element of the first-degree kidnapping charge, and therefore, double jeopardy; (3) the trial court's refusal to instruct the jury on the lesser offense of attempted first-degree sexual offense; and (4) the trial court's instruction to the jury that a knife is a dangerous or deadly weapon as a matter of law—as defendant failed to object to this instruction at trial, he argues on appeal that this alleged error constitutes plain error.

[1] Defendant first argues that the trial court erred in denying his motions to dismiss the charges of first-degree sexual offense and first-degree kidnapping for insufficiency of the evidence. In deciding a motion to dismiss for insufficient evidence, a trial court must determine whether there is substantial evidence of each required element of the offense charged and that the defendant was the perpetrator. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Substantial evidence is relevant evidence that would be sufficient to persuade a rational juror to accept a particular conclusion. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899 (2000), *cert. denied*, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). When ruling on a motion to dismiss for insufficient evidence, a trial court must take the evidence in the light most favorable to the State and afford every reasonable inference from the evidence to the State. *Id.* at 586, 528 S.E.2d at 899.

The elements required for a conviction of first-degree sexual offense relevant to this case are: (1) engaging in a sexual act; (2) with another person by force or against the will of that person; and (3) employing or displaying a dangerous or deadly weapon or an article the other person reasonably believes to be a dangerous or deadly weapon. N.C. Gen. Stat. § 14-27.4(a)(2)(a) (2005). A sexual act is defined by statute as:

cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]

N.C. Gen. Stat. § 14-27.1(4) (2005). The sexual act alleged in the indictment in the case *sub judice* was anal intercourse. In the present case, defendant argues that there was insufficient evidence that he engaged in anal intercourse with the victim.

In the light most favorable to the State, the victim testified that defendant penetrated her anally. The report from the rape kit concluded that semen was present on the swab from the victim's rectum. Furthermore, the emergency room doctor testified that it was possible for a person to be penetrated anally without showing signs of trauma due to the physiology of the anus. Moreover, the victim may not recall anal penetration due to the fear experienced during such an assault.

Although we note that the victim presented conflicting testimony regarding whether she recalled anal penetration, in viewing the evidence in the light most favorable to the State, there is substantial evidence that defendant engaged in a sexual act of anal penetration with the victim, against the victim's will, and by employing the knife as a dangerous or deadly weapon. *See State v. Hensley*, 294 N.C. 231, 237-38, 240 S.E.2d 332, 336 (1978) (conflicts in the victim's testimony go to the weight and credibility of that testimony which are for the jury to determine). Accordingly, this assignment of error is overruled.

**[2]** Defendant next argues that the trial court erred in denying his motion to dismiss the charge of first-degree kidnapping for insufficient evidence. The elements required for a conviction of first-degree kidnapping relevant in the present case are: (1) unlawful confinement, restraint, or removal from one place to another; (2) of any person over 16 years of age; (3) for the purpose of facilitating the commission of a felony or doing serious bodily harm to or terrorizing that person or another; and (4) that person is sexually assaulted. N.C. Gen. Stat. § 14-39 (a) and (b) (2005). To be sufficient as an element of kidnapping the confinement, restraint, or removal must not be an inherent or inevitable element of another felony with which the defendant is charged. *See State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

Our Supreme Court has held that "an asportation which is an inherent and integral part of some crime for which defendant has been convicted other than the kidnapping will not support a separate conviction for kidnapping." *State v. Tucker*, 317 N.C. 532, 535, 346 S.E.2d 417, 419 (1986), citing *State v. Irwin*, 304 N.C. 93, 102, 282 S.E.2d 439, 446 (1981). The key principle governing whether a kidnapping charge will lie is whether "[u]nder such circumstances the victim is . . . exposed to greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Irwin*, 304 N.C. at 103, 292 S.E.2d at 446. (holding there is mere technical

asportation when an armed robber forced the clerk from the front to the back of the store at knife point to open the safe.) *Id.* Most recently, our Supreme Court has held that:

> a trial court, in determining whether a defendant's asportation of a victim during the commission of a separate felony offense constitutes kidnapping, must consider whether the asportation was an inherent part of the separate felony offense, that is, whether the movement was "a mere technical asportation." If the asportation is a separate act independent of the originally committed criminal act, a trial court must consider additional factors such as whether the asportation facilitated the defendant's ability to commit a felony offense, or whether the asportation exposed the victim to a greater degree of danger than that which is inherent in the concurrently committed felony offense.

*State v. Ripley*, 360 N.C. 333, 340, 626 S.E.2d 289, 293-94 (2006). In *Ripley*, the Court concluded that the "asportation of the [victims] from one side of the motel lobby door to the other was not legally sufficient to justify defendant's convictions of second-degree kidnapping." *Id. Cf. State v. Tucker*, 317 N.C. at 536, 346 S.E.2d at 419-20 (the defendant's removal of the victim from her truck, dragging her to the river and under the bridge where he committed the sexual assaults out of the view of passersby does not constitute a mere technical asportation).

In the present case, defendant argues that there was insufficient evidence of confinement, restraint or removal of the victim beyond that which was inherent to the crimes of armed robbery and rape. At trial, the victim's relevant testimony is as follows: The victim was standing in her kitchen when she saw papers in her carport that were not present the preceding night. From her kitchen, she unlocked and opened the storm door, reached out, and started to step out of the house onto the first step. Before her foot touched the first step, defendant grabbed her arm and pushed her back into the kitchen. While in her kitchen, defendant pulled a knife out of his pocket and demanded money from the victim. She said that she did not have any money. The victim asked defendant not to hurt her, and he put the knife back in his pocket. Then, defendant pushed the victim through the heating hall and into the den. Defendant proceeded to rape the victim in the den.

After defendant raped the victim in the den, defendant asked for money again, and defendant followed the victim down the hall to her

bedroom. The victim retrieved one dollar from her billfold, which she gave to defendant. Thereafter, defendant vacated the premises.

With regards to armed robbery in the present case, defendant demanded money from the victim in the kitchen while brandishing the knife, and again in the den. After defendant's second demand, the victim walked from the den down the hallway to retrieve the money from her bedroom. The victim's movement down the hallway is a mere asportation because the armed robbery began when defendant showed the knife to the victim in the kitchen and demanded money, and defendant's movement between the kitchen, den, and bedroom did not expose the victim to a greater degree of danger. Therefore, this mere asportation constitutes insufficient evidence of confinement, restraint, or removal.

With regards to rape, defendant began and concluded the rape in the den. Because the crime of rape occurred wholly in the den, we find that there was insufficient evidence of confinement, restraint, or removal. Accordingly, we vacate the conviction of kidnapping. Thus, we remand to the trial court for resentencing according to defendant's vacated first-degree kidnapping charge.

As a result of the vacated first-degree kidnapping charge, we will not address defendant's double jeopardy argument.

**[3]** Finally, defendant argues that the trial court erred, or committed plain error, in instructing the jury that a knife is a dangerous or deadly weapon as a matter of law. At the charge conference, the trial judge informed the prosecutor and defense counsel that he intended to instruct the jury that a knife is a dangerous weapon on the first-degree rape charge. Neither attorney objected to that instruction. In the charge to the jury, the trial court instructed the jurors regarding the elements of the offenses and stated "a knife is a dangerous weapon" or "a knife is a dangerous or deadly weapon" in the instructions for robbery with a dangerous weapon, first-degree rape, and first-degree sexual offense. Defendant failed to object to these instructions.

No portion of a jury instruction may be assigned as error on appeal unless it was objected to prior to the jury's retiring. N.C. R. App. P., Rule 10(b)(2) (2006); *State v. McNeil*, 350 N.C. 657, 691, 518 S.E.2d 486, 507 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 321 (2000). In criminal cases, an issue that has not been objected to at trial, and therefore not properly preserved for appeal, still may be assigned as error on appeal if specifically alleged to constitute plain

error. N.C. R. App. P., Rule 10(c)(4) (2006); *see State v. Hartman*, 90 N.C. App. 379, 368 S.E.2d 396 (1988). Consequently, our review of this assignment of error is limited to whether or not there is plain error.

The plain error rule is applied only in those exceptional cases where a review of the whole record shows that there exists a

> fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

In the case sub judice, the victim testified that she saw defendant pull a knife from his pocket. The victim asked defendant not to hurt her, and defendant returned the knife to his pocket. The victim was unable to describe the knife, and only stated that she saw that it was a knife and she was scared. The victim further testified that, several hours after the incident, she told the investigating officer that the knife looked like a switchblade, but could not remember at the time of trial whether the knife looked like a switchblade or not.

Assuming, without deciding, the evidence regarding the knife was insufficient to establish that the knife was a dangerous weapon as a matter of law, we hold that the trial court's jury instruction did not amount to plain error. To rise to the level of plain error, a jury instruction, when viewed in light of the entire record, must have had a probable impact on the jury's determination of guilt. *Odom*, 307 N.C. at 660-61, 300 S.E.2d at 378 (stating, "even when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

The essential element of first-degree rape at issue in the instant case is the employment or display of a dangerous or deadly weapon or an article which the victim reasonably believes to be such a

weapon during the commission of the offense. In light of the entire record, particularly the victim's testimony that she knew it was a knife that defendant took from his pocket, that she asked him not hurt her upon seeing the knife, and that she was scared, we conclude that the jury likely would have found that the victim reasonably believed the knife to be a dangerous or deadly weapon. *See State v. Clemmons*, 319 N.C. 192, 200-01, 353 S.E.2d 209, 214 (1987). Accordingly, we hold, even if the trial court's instruction was erroneous, the probable impact of the instruction in question on the jury's finding of guilt was not sufficient to make this the "rare case" in which the instructional error, if such error existed, constitutes plain error absent objection by defendant.

Affirmed in part, vacated and remanded with instructions in part.

Judges McGEE and McCULLOUGH concur.