STATE OF NORTH CAROLINA v. STANFIELD D. KEY, DEFENDANT

No. COA06-124

(Filed 21 November 2006)

**1. Rape— one incident—two penetrations—two charges**

Two acts of penetration during one incident supported two rape charges.

**2. Kidnapping— not inherently part of a rape—separate restraint and asportation not required for rape**

A kidnapping was not an inherent part of a rape, and defendant's motion to dismiss the kidnapping charge was properly denied, where the rape did not require that the victim be separately restrained and moved from one room to another.

**3. Burglary and Unlawful Breaking or Entering— standing on doorsill—sufficient evidence of attempted second-degree burglary**

Standing on a door sill for thirty to sixty seconds was an overt act going beyond preparation and was sufficient·to submit attempted second-degree burglary to the jury where there was evidence that defendant searched for homes for sale, approached the homeowners to learn about the house, returned at night for a credit card entry, and was seen at this house at night standing on a door sill before leaving.

**4. Sentencing— prior record level—equivalence of out-of-state conviction**

For sentencing purposes, defendant's Maryland conviction for theft is substantially similar to the North Carolina offense of misdemeanor larceny and there was no error in sentencing defendant as a Prior Record Level II offender.

STATE v. KEY

[180 N.C. App. 286 (2006)]

**5. Kidnapping— indictment and instruction—elements**

There was no plain error where defendant was indicted for kidnapping by confining, restraining, and removing his victim, and convicted on an instruction on restraining or removing.

**6. Sentencing— mitigating factor not found—sentence within presumptive range**

Findings in mitigation are not needed unless the court deviates from the presumptive range. There was no error in not finding that defendant's honorable discharge from military service was a mitigating factor where he was sentenced in the presumptive range.

Appeal by defendant from a judgment entered 1 June 2005 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General K.D. Sturgis, for the State.*

*Russell J. Hollers, III for the defendant.*

BRYANT, Judge.

Stanfield D. Key (defendant) appeals from a 1 June 2005 judgment entered consistent with a jury verdict finding him guilty of one count of first degree burglary, two counts of first degree rape, one count of second degree kidnapping and one count of attempted second degree burglary. Defendant was sentenced to a minimum term of 480 months to a maximum of 594 months imprisonment, to run consecutively.

On the evening of 19 September 2000, defendant broke into the Pfeifle home and threatened Mrs. Pfeifle and her two children with a knife in the Pfeifle's bedroom. While in the home, defendant forced Mrs. Pfeifle at knife point to go downstairs into the kitchen where he taped her eyes shut, took the phone off the hook and then told her to go into the family room and remove her clothing. When Mrs. Pfeifle offered defendant her money, defendant stated "[t]hat is not why I am here." Defendant had vaginal intercourse with Mrs. Pfeifle on the leather couch.

In a separate occurrence, on the evening of 15 February 2001, defendant approached the Lesh residence from behind the home, walked to the front door and stood in the doorway for thirty to sixty

seconds. Defendant then walked down the driveway away from the Lesh home. Additional facts pertinent to defendant's appeal will be discussed below.

Defendant raises six issues on appeal: whether the trial court erred in (I) denying defendant's motion to dismiss one of two first degree rape charges; (II) denying defendant's motion to dismiss the kidnapping charge; (III) denying defendant's motion to dismiss the attempted second degree burglary charge; (IV) sentencing defendant with a Prior Record Level II; (V) instructing the jury on kidnapping in a manner inconsistent. with the indictment; and (VI) sentencing defendant outside the presumptive range.

I

[1] Defendant first argues the trial court erred in denying his motion to dismiss one of two rape charges. Defendant argues there was only one rape of Mrs. Pfeifle because there was not a single act or fact that separated the first penetration from the second. We disagree.

When considering a motion to dismiss, the trial court must "determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. *Id.*

> Upon a motion to dismiss, the evidence must be considered in the light most favorable to the State, giving it the benefit of every reasonable inference that can be drawn from the evidence. Contradictions and inconsistencies in the evidence are to be resolved in favor of the State. First degree rape is vaginal intercourse with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim. The force necessary to constitute an element of the crime of rape need not be actual physical force. The use of force may be established by evidence that submission was induced by fear, duress or coercion. . . . Each act of forcible vaginal intercourse constitutes a separate rape. Generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense.

*State v. Owen*, 133 N.C. App. 543, 551-52, 516 S.E.2d 159, 165 (1999) (citations and internal quotation marks omitted).

**STATE v. KEY**

[180 N.C. App. 286 (2006)]

The State's evidence tended to show that Mrs. Pfeifle and her two children were asleep in the Pfeifle's bedroom when defendant entered the room and threatened to kill them with a knife if they failed to cooperate with defendant. During a struggle between defendant and Mrs. Pfeifle, Mrs. Pfeifle was cut on the nose with the knife. While the children remained in the upstairs bedroom, defendant ordered Mrs. Pfeifle, at knife point, to go downstairs and told her not to "do anything stupid." When they got downstairs, he taped her eyes shut with packing tape he had previously placed on the kitchen table. After her eyes were taped shut, she heard him take the telephone off the hook. Defendant instructed Mrs. Pfeifle to go into the family room, sit down on the couch and take off her pajama bottoms. He said he had a condom, allowed her to feel it on him, and then proceeded to have vaginal intercourse with her as she laid on the couch with her head against the arm rest. Defendant then withdrew his penis from her vagina, turned her on her side, so that she faced the back of the couch and penetrated her from behind. He then stopped suddenly, said he could not continue because Mrs. Pfeifle was "too nice of a person," and allowed her to remove the tape from her eyes.

The evidence shows that, after threatening Mrs. Pfeifle with a knife and blinding her by taping her eyes shut, defendant penetrated Mrs. Pfeifle vaginally from the front, then withdrawing, turning her on her side and re-penetrating her vaginally. Here, there is sufficient evidence to show that defendant committed two separate acts of first degree rape such that defendant's motion to dismiss the second count of first degree rape was properly denied. *See State v. Lancaster*, 137 N.C. App. 37, 43, 527 S.E.2d 61, 66 (2000) (defendant's motion to dismiss one of the counts of rape was properly denied where the victim testified that she was first penetrated by the defendant from behind and then was penetrated a second time when he forced her onto a shelf in the closet so that she was facing him). This assignment of error is overruled.

## II

[2] Defendant next argues the trial court erred in denying his motion to dismiss the second degree kidnapping charge because defendant's conduct was not an act separate from the rape. Specifically, defendant contends he "did not exceed the show or use of force inherent in the crime of rape" and that any restraint or removal of Mrs. Pfeifle was a "mere technical asportation." We disagree.

Kidnapping is the unlawful confinement, restraint, or removal of a person from one place to another for the purpose of: (1) holding that person for a ransom or as a hostage, (2) facilitating the commission of a felony or facilitating flight of any person following the commission of a felony, (3) doing serious bodily harm to or terrorizing the person, or (4) holding that person in involuntary servitude. N.C. Gen. Stat. § 14-39(a) (2005). Second degree kidnapping is shown by some "confinement, restraint or removal of the victim" for one of the unlawful purposes specified in G.S. § 14-39, including the purpose of facilitating the commission of a felony. *State v. Fulcher*, 294 N.C. 503, 517-18, 243 S.E.2d 338, 348 (1978). "One who . . . by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute." *Id.* at 523, 243 S.E.2d at 351. "[A] person cannot be convicted of kidnapping when the only evidence of restraint is that 'which is an inherent, inevitable feature' of another felony[.]" *State v. Ripley*, 360 N.C. 333, 337, 626 S.E.2d 289, 292 (2006) (citation omitted). The court may consider whether the defendant's acts place the victim in greater danger than is inherent in the other offense, or subject the victim to the kind of danger and abuse that the kidnapping statute was designed to prevent. *State v. McNeil*, 155 N.C. App. 540, 546, 574 S.E.2d 145, 149 (2002), *appeal dismissed and disc. rev. denied*, 356 N.C. 688, 578 S.E.2d 323 (2003). The court also considers whether defendant's acts "cause additional restraint of the victim or increase the victim's helplessness and vulnerability." *State v. Smith*, 359 N.C. 199, 213, 607 S.E.2d 607, 618 (2005).

Here, defendant broke into the Pfeifle home at midnight, went upstairs to Mrs. Pfeifle's bedroom, where he threatened the lives of Mrs. Pfeifle and her children at knife point. Defendant then removed Mrs. Pfeifle from her bedroom to the kitchen, again at knife point, forcing her to the kitchen table, where he had previously placed his packing tape and used it to cover Mrs. Pfeifle's eyes. The evidence shows defendant's plan included removing Mrs. Pfeifle to a place in the home where he could further restrain her and rape her while she could not see or identify defendant. *See State v. Johnson*, 337 N.C. 212, 446 S.E.2d 92 (1994) (kidnapping charges upheld where the victim was exposed to a greater danger than that inherent in the armed robbery itself). Such removal of Mrs. Pfeifle from her bedroom to the kitchen and finally to the family room to be raped on the leather couch was not necessary to accomplish the crime of rape. *See Smith*, 359 N.C. at 213, 607 S.E.2d at 618 ("separate evidence supported the kidnapping and the robbery [where] defendant took the additional

steps of binding the victim's wrists and ankles and taping his mouth [which were] not an inherent, inevitable part of the robbery [but] exposed the victim to a greater danger[.]").

Defendant argues *State v. Cartwright*, 177 N.C. App. 531, 629 S.E.2d 318 (2006), in which the second degree kidnapping charge was vacated, controls here. However, in *Cartwright*, the defendant began an armed robbery by demanding money from the victim while she was in the kitchen and again demanded money from her while they were in the den. *Id.* After the defendant's second demand, the victim walked from the den down the hallway to retrieve the money from her bedroom. *Id.* Our court in *Cartwright* held because defendant's movement between the kitchen, den, and bedroom did not expose the victim to a greater degree of danger, a mere asportation existed which was inherent in the armed robbery and insufficient evidence of confinement, restraint, or removal. *Id.*, 177 N.C. App. at 535, 629 S.E.2d at 323.

We distinguish the present case from the facts in *Cartwright*. Here, the commission of the underlying felony of rape did not require defendant to separately restrain or remove the victim from her upstairs bedroom to the family room. The additional steps taken by defendant to tape Mrs. Pfeifle's eyes shut and to increase her help-lessness and vulnerability by taking the phone off the hook (eliminating her ability to call for help), all while being threatened at knife point, exceeded the force necessary to commit the rape. In this case, defendant's conduct put Ms. Pfeifle in a more vulnerable position by threatening her life, blinding her and preventing her from calling for help after being removed from the bedroom where her children remained. Therefore, a jury could conclude that Mrs. Pfeifle was placed in greater danger than that inherent in a rape. Further, in *Cartwright*, the underlying felony was an armed robbery which began when the defendant first entered the victim's home and demanded her money and the armed robbery continued as the defendant and the victim moved throughout the home until the victim relinquished her money. Here, when Mrs. Pfeifle offered defendant her money, defendant stated "[t]hat is not why" he was at the Pfeifle home, all the while intending to rape her in her family room on the leather couch with her eyes taped shut. On these facts, the removal of Mrs. Pfeifle from one room to another was not a mere asportation, but sufficient evidence of a separate and independent act in further-ance of the kidnapping. The trial court properly denied defendant's motion to dismiss the second degree kidnapping charge. This assign-ment of error is overruled.

III

[3] Defendant next argues the trial court erred in denying his motion to dismiss the attempted second degree burglary charge as to the Lesh residence contending that there was no evidence of defendant's overt act to gain entry into the Lesh house. We disagree.

"The constituent elements of second-degree burglary are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or sleeping apartment (5) of another (6) with the intent to commit a felony therein." *State v. Rick*, 342 N.C. 91, 101, 463 S.E.2d 182, 188 (1995) (quotation omitted). The elements of attempted second degree burglary do not require actual occupation of the dwelling. *State v. Thomas*, 350 N.C. 315, 348, 514 S.E.2d 486, 506 (1999); N.C. Gen. Stat. § 14-51 (2005).

"The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense." *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003). "An overt act for an attempt crime, must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. . . . [A] defendant can stop his criminal plan short of an overt act on his own initiative or because of some outside intervention. However, once a defendant engages in an overt act, the offense is complete[.]" *State v. Gartlan*, 132 N.C. App. 272, 275, 512 S.E.2d 74, 77, *disc. rev. denied, appeal dismissed*, 350 N.C. 597, 537 S.E.2d 485 (1999) (citations omitted). *See also State v. Williams*, 355 N.C. 501, 581-82, 565 S.E.2d 609, 656 (2002) (evidence of a defendant's attempt to commit an offense can be shown by establishing defendant's plan in committing a type of offense and that defendant engaged in an overt act that was part of the initial phase of that plan).

Here, the evidence establishes that defendant searched for homes for sale on the Internet, approached the homeowners to learn about them and their property, and subsequently returned at night to make a "credit card entry." Defendant approached Mr. Lesh on 9 February 2001 as an interested buyer to observe the inside of the home and had a lengthy conversation about the house, neighborhood and especially the leather furniture, which he photographed. On the evening of 15 February 2001, the Leshes' neighbor saw a suspicious van being driven through the cul de sac, observed it slow down at the Leshes' residence and called 911. The neighbor then observed defendant park his vehicle in the adjoining neighborhood, enter the rear of the

Leshes' property and come around to the Leshes' front doorway, where he stood in the door sill for thirty to sixty seconds before walking away from the door. Defendant's actions constitute evidence from which a jury may properly infer defendant's criminal intent. *See State v. Gibbs*, 335 N.C. 1, 54, 436 S.E.2d 321, 351 (1993) (defendant's action in donning gloves, mask and cap to hide his identity prior to committing the offenses are among matters from which a jury could infer his criminal intent). Contrary to defendant's claim that he "did not climb anything or put himself in a position to break in," the evidence tends to show that he stood up on the door sill—and not merely on the porch—for thirty to sixty seconds. This conduct constitutes sufficient overt acts which went beyond mere preparation but fell just short of the completed offense. Based on defendant's conduct and this additional evidence, the jury could infer that, when he was standing on the door sill, defendant was attempting to gain entry into the Leshes' home. The trial court did not err in denying defendant's motion to dismiss this charge. This assignment of error is overruled.

IV

[4] Defendant's next argues there was insufficient evidence to sentence defendant as a Prior Record Level II offender. Specifically, defendant contends that "[t]he state did not prove that the out-of-state conviction was substantially similar to the North Carolina crime of misdemeanor larceny."

At issue here is defendant's Maryland conviction for "theft" under the Maryland statute, now codified at Md. Criminal Law Code § 7-104, that prohibits "unauthorized control over property" and that also refers to the prohibited conduct as "theft." The legislative intent of the statute was to "create a single statutory crime encompassing various common law distinctions between particular forms of larceny." *State v. Burroughs*, 333 Md. 614, 636 A.2d 1009 (1994) (citation omitted).

"[W]hether a conviction under an out-of-state statute is substantially similar to an offense under [N.C.G.S. § 15A-1340.14] is a question of law that must be determined by the trial court[,]" not the jury. *State v. Hanton*, 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006). "[W]hen a statute punishes a crime known at common law without defining its elements, the common law definition controls." *State v. Buckom*, 328 N.C. 313, 316, 401 S.E.2d 362, 364 (1991). At common law the elements of larceny are that the perpetrator "(a) took the property of another; (b) carried it away; (c) without the owner's con-

sent; and (d) with the intent to deprive the owner of his property permanently." *State v. White*, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988) (citation omitted).

Defendant argues that the Maryland statute "does not require that the thief intend to deprive the owner of the property permanently[,]" "does not criminalize the same . . . *mens rea* criminalized by . . . N.C.G.S. § 14-72[,]" and "does not require the taking and carrying away of the owner's property."

The Maryland statute provides:

> (a) Unauthorized control over property.—A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person: (1) intends to deprive the owner of the property; (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or (3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

Md. Ann. Code art. 27, § 7-104 (2005). "[I]n construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results." *State v. Jones*, 359 N.C. 832, 837, 616 S.E.2d 496, 499 (2005). The Maryland statute defines three circumstances in which defendant's *mens rea* either is explicitly required, or in which intent must necessarily be inferred from facts showing that the perpetrator "uses, conceals, or abandons the property in a manner that deprives the owner of the property," or "uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property." Md. Ann. Code art. 27, § 7-104 (2005).

The three types of takings prohibited by the Maryland statute are similar to the North Carolina common law regarding taking and asportation. In both states, the law is focused on the perpetrator placing the property under his control and depriving the owner of control over it.[1] Defendant's Maryland conviction for theft is substantially

---

1. For purposes of larceny, a taking is complete in the sense of being satisfied at the moment a thief first exercises dominion over the property. *State v. Carswell*, 296 N.C. 101, 249 S.E.2d 427 (1978); *State v. Barnes*, 345 N.C. 146, 149-50, 478 S.E.2d 188, 191 (1996) (citation omitted). "A bare removal from the place in which he found the goods, though the thief does not quite make off with them, is a sufficient asportation,

similar to the North Carolina offense of misdemeanor larceny for sentencing purposes. Therefore the trial court did not err in sentencing defendant as a Prior Record Level II offender. This assignment of error is overruled.

V

**[5]** Defendant next challenges whether the trial court erred as the indictment charged that he "confined, restrained *and* removed" Mrs. Pfeifle and the jury was instructed to convict based on a finding that defendant "restrained *or* removed" Mrs. Pfeifle. Because defendant did not object to these jury instructions at trial, the North Carolina Rules of Appellate Procedure limit our review to plain error. N.C. R. App. P. 10(c)(4). The plain error standard requires a defendant to make a showing that absent the erroneous instruction, a jury would not have found him guilty of the offense charged. *State v. Raynor*, 128 N.C. App. 244, 247, 495 S.E.2d 176, 178 (1998). To rise to the level of plain error, the error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

> [T]he indictment charged defendant with kidnapping by "confining, restraining, and removing" the victim. The jury instruction allowed a conviction upon a showing of either confining, restraining, or removing, which is not an "abstract theory not supported by the bill of indictment." . . . Defendant argues that by asserting three theories in the indictment, the State has confined itself to proving that all three theories were used in order to convict the defendant. We disagree. . . . Since an indictment need only allege one statutory theory, an indictment alleging all three theories is sufficient and puts the defendant on notice that the State intends to show that the defendant committed kidnapping in any one of the three theories. The jury instruction correctly allowed any one of the three theories to serve as the basis for a finding of kidnapping; therefore, the jury instruction accurately reflected the three permissible theories alleged in the indictment. Accordingly, the trial court did not err in its jury instruction on kidnapping.

or carrying away." *State v. Gray*, 58 N.C. App. 102, 105, 293 S.E.2d 274, 277 (1982) (citation omitted). "The least removal of an article, from the actual or constructive possession of the owner, so as to be under the control of the felon, will be a sufficient asportation" to establish larceny. *State v. Walker*, 6 N.C. App. 740, 743, 171 S.E.2d 91, 93 (1969). "[I]ntent or absence of it may be inferred from the circumstances surrounding the occurrence . . ." *State v. Keitt*, 153 N.C. App. 671, 675, 571 S.E.2d 35, 38 (2002).

*State v. Lancaster*, 137 N.C. App. 37, 46-48, 527 S.E.2d 61, 67-69, *disc. rev. denied in part and allowed in part*, 352 N.C. 680, 545 S.E.2d 723 (2000). Defendant has failed to show error in the jury instruction on kidnapping. This assignment of error is overruled.

**[6]** Defendant argues that the trial court erred at sentencing by not finding a mitigating factor and therefore sentencing him in the presumptive range, and not the mitigated range. Defendant argues the trial court erred by not considering his honorable discharge from the U.S. Army. However, he correctly acknowledges that the trial court need not make any findings in mitigation unless it deviates from the presumptive range. *State v. Caldwell*, 125 N.C. App. 161, 479 S.E.2d 282 (1997); *See also State v. Hagans*, 177 N.C. App. 17, 628 S.E.2d 776, 786 (2006) ("Defendant's notion that the court is obligated to formally find or act on proposed mitigating factors when a presumptive sentence is entered has been repeatedly rejected."). This assignment of error is overruled.

No error.

Judges TYSON and LEVINSON concur.