McCULLOUGH, Judge.
*107 Donald Lee Curtis ("defendant") appeals from judgments entered in accordance with a sentencing agreement reached after a jury found him guilty on one count of attempted robbery with a firearm, one count of possession of a firearm by a felon, one count of first-degree burglary of a dwelling house, two counts of robbery with a firearm, two counts of assault with a deadly weapon, and two counts of second-degree kidnapping. For the following reasons, we find no error.
*108 I. Background
In the early morning hours of 30 April 2013, three armed black males, two with handguns and one with a shotgun, busted through the door of a residence at 2400 Harper Road in Clemmons where Megan Martin and Refeigo Pina lived. At the time of the break in, Christopher Cowles and Justin Collins were also at the residence. Cowles was with Pina in the downstairs living room where the intruders entered learning how to play Pina's guitar. Justin Collins and Martin were asleep in the upstairs bedroom.
As the intruders entered, they asked where Collins was, instructed each other to get the cell phones, and ordered Cowles and Pina to put their hands up. Cowles attempted to quickly dial 911 before he tossed his cell phone to the side of the couch that he and Pina were sitting on. The intruders did not get either Cowles' or Pina's cell phones. Cowles recognized the two intruders with handguns (the "other intruders") and inquired why they were doing what they were doing. The third intruder, whom Cowles did not know but whom Cowles was later able to identify as defendant with 100% certainty, then placed his shotgun in Cowles' face and threatened to shoot Cowles if Cowles was not quiet. Pina was held at gunpoint by one of the other intruders while the third intruder looked around for Collins. Upon repeated *524 questioning concerning Collins' whereabouts, Cowles told the intruders that Collins was upstairs.
The intruders then ushered Cowles and Pina upstairs with guns to their backs. Cowles and Pina did not go upstairs voluntarily. Once upstairs, Cowles cut the lights on and tapped Collins on the foot to wake him up. As Collins was waking up, one of the other intruders pulled the covers back and struck Collins on the side of the head with a handgun. Martin was awakened by the commotion and was frantic. The intruders directed Cowles, Pina, Collins, and Martin into the corner of the bedroom and told them not to move. As they were moving to the corner, one of the other intruders struck Pina in the face with a handgun.
Defendant held the shotgun pointed towards Cowles, Pina, Collins, and Martin while the other intruders tore the bedroom apart. The other intruders took Collins' cellphone and wallet with approximately $2,000 in it from the nightstand, took cash from Martin's purse, and took Martin's iPhone from the dresser.
The other intruders then instructed defendant to stay with Cowles, Pina, Collins, and Martin as the other intruders went back downstairs. Cowles could hear lots of banging and smashing downstairs, like things were being destroyed. Defendant stayed at the top of the stairs with the *109 shotgun pointed at Cowles, Pina, Collins, and Martin to keep them from moving for several minutes before telling them not to move and backing down the stairs. The intruders then fled from the apartment, slashing tires on Cowles', Pina's, Collins', and Martin's vehicles upon their exit. In addition to the items taken from upstairs, the intruders took a PlayStation 3, Pina's guitar, and car keys from downstairs.
Besides Cowles' identification of defendant, both Collins and Martin were 100% certain that defendant was the intruder with a shotgun. Collins recognized defendant from time they spent incarcerated together.
Based on the events of 30 April 2013, defendant was arrested and later indicted by a Forsyth County Grand Jury on 23 September 2013 on three counts of robbery with a dangerous weapon, one count of attempted robbery with a dangerous weapon, two counts of second-degree kidnapping, one count of possession of a firearm by a felon, one count of first-degree burglary, and two counts of assault with a deadly weapon. Defendant's case came on for trial in Forsyth County Superior Court before the Honorable Judge Ronald E. Spivey on 10 March 2014.
At the conclusion of defendant's trial the jury returned verdicts finding defendant guilty on all charges except the one count of robbery with a dangerous weapon related to Pina. In accordance with a sentencing agreement reached between defendant and the State, the trial court consolidated defendant's nine convictions into three Class D felonies and sentenced defendant at the top of the presumptive range for each felony with a prior record level VI to three consecutive terms of 128 to 166 months imprisonment. The judgments were entered on 12 March 2014. Defendant gave notice of appeal in open court following sentencing.
II. Discussion
At the close of the State's evidence, defendant moved to dismiss all of the charges and the trial court denied defendant's motion. Defendant then renewed his motion after he decided not to put on any evidence in his own defense. The trial court again denied defendant's motion. Now on appeal, the only issue is whether the trial court erred in denying defendant's motion to dismiss the kidnapping charges.[1]
*525 3 *110 "This Court reviews the trial court's denial of a motion to dismiss de novo. " State v. Smith, 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) ),cert. denied, 531 U.S. 890, 121 S.Ct. 213, 148 L.Ed.2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994), cert. denied, 515 U.S. 1135, 115 S.Ct. 2565, 132 L.Ed.2d 818 (1995).
In North Carolina, any person who unlawfully confines, restrains, or removes from one place to another, any other person sixteen years old or older without the consent of such person is guilty of kidnapping if the confinement, restraint, or removal is for a purpose enumerated in the statute, including "[f]acilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]" N.C. Gen.Stat. § 14-39(a) (2015). "If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree...." N.C. Gen.Stat. § 14-39(b).
Recognizing potential double jeopardy concerns in cases where the restraint necessary for kidnapping, that is "a restriction, by force, threat or fraud, without a confinement[,]" State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978), is essential to other charges, our Supreme Court explained as follows:
*111 It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that [N.C. Gen.Stat. § ] 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. [To avoid the constitutional issue], we construe the word "restrain," as used in [N.C. Gen.Stat. § ] 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.
On the other hand, it is well established that two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of the other (e.g., a breaking and entering, with intent to commit larceny, which is followed by the actual commission of such larceny). In such a case, the perpetrator may be convicted of and punished for both crimes. Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony.
Id. at 523-24, 243 S.E.2d at 351-52. Thus, in Fulcher, the Court held there was "no violation of the constitutional provision against double jeopardy in the conviction and punishment of the defendant for ... two crimes against nature and also for ... two crimes of kidnapping[,]" id. at 525, 243 S.E.2d at 352, because
[t]he evidence for the State [was] clearly sufficient to support a finding by the jury *526 that the defendant bound the hands of each of the two women, procuring their submission thereto by his threat to use a deadly weapon to inflict serious injury upon them, thus restraining each woman within the meaning of [N.C. Gen.Stat. § ] 14-39, and that his purpose in so doing was to facilitate the commission of the felony of crime against nature.
*112 Id. at 524, 243 S.E.2d at 352. The Court further explained that, based on the evidence, "the crime of kidnapping was complete, irrespective of whether the then contemplated crime against nature even occurred[,]" and "[t]he restraint of each of the women was separate and apart from, and not an inherent incident of, the commission upon her of the crime against nature, though closely related thereto in time." Id.
"In accordance with [the Court's] analysis of the term 'restraint' [in Fulcher ], [the Court later] construe[d] the phrase 'removal from one place to another' [in N.C. Gen.Stat. § 14-39 ] to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." State v. Irwin, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981). The analysis applies equally to "confinement" in N.C. Gen.Stat. § 14-39, which "connotes some form of imprisonment within a given area, such as a room, a house or a vehicle." Fulcher, 294 N.C. at 523, 243 S.E.2d at 351. More recently, the Court has explained that
in determining whether a defendant's asportation of a victim during the commission of a separate felony offense constitutes kidnapping, [a trial court] must consider whether the asportation was an inherent part of the separate felony offense, that is, whether the movement was "a mere technical asportation." If the asportation is a separate act independent of the originally committed criminal act, a trial court must consider additional factors such as whether the asportation facilitated the defendant's ability to commit a felony offense, or whether the asportation exposed the victim to a greater degree of danger than that which is inherent in the concurrently committed felony offense.
State v. Ripley, 360 N.C. 333, 340, 626 S.E.2d 289, 293-94 (2006).
In the present case, defendant was convicted of kidnapping Cowles and Pina. Defendant now contends the trial court erred by not dismissing the kidnapping charges for insufficiency of the evidence because Cowles and Pina were moved and restrained only to the extent required for the armed robberies. Specifically, defendant asserts that "[a]ll restraint and movement of Cowles and Pina occurred during the course of the robberies and was integral to the robberies. There was no independent restraint or removal that could support [defendant's] convictions for kidnapping Cowles and Pina."
In addition to Fulcher, supra, defendant relies on a number of cases in which our appellate courts have overturned kidnapping convictions. The facts are important in each case.
*113 In Irwin, the defendant was convicted of first degree felony murder, attempted armed robbery, and kidnapping after a failed robbery of a drugstore occupied by the owner and an employee. 304 N.C. at 95, 282 S.E.2d at 442. Pertinent to the present case, during the course of the attempted robbery, the defendant's accomplice "forced [the employee] at knifepoint to walk from her position near the ... cash register to the back of the store in the general area of the prescription counter and safe." Id. at 103, 282 S.E.2d at 446. On appeal, defendant challenged the trial court's denial of his motion to dismiss the kidnapping charge and the Court reversed, noting that " [a]ll movement occurred in the main room of the store[ ]" and holding that " [the employee's] removal to the back of the store was an inherent and integral part of the attempted armed robbery[ ]" because "[t]o accomplish [the] defendant's objective of obtaining drugs it was necessary that either [the owner] or [the employee] go to the back of the store to the prescription counter and open the safe." Id. Thus, the removal of the employee "was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." Id.
*527 In State v. Ripley, the defendant was convicted of seven counts of robbery with a firearm, three counts of attempted robbery with a firearm, and fifteen counts of second-degree kidnapping after a crime spree that included the armed robbery of a an Extended Stay American Motel and patrons. 172 N.C.App. 453, 453-54, 617 S.E.2d 106, 107 (2005), aff'd., 360 N.C. 333, 626 S.E.2d 289 (2006). The evidence in Ripley pertinent to the present case was that the defendant and an accomplice waited in a vehicle outside the motel while three other accomplices entered the lobby of the motel and ordered the front desk clerk to empty the cash drawer. Id. at 454, 617 S.E.2d at 107-08. The robbers then asked about surveillance and the clerk led one of the robbers to the break room where the clerk handed over what she believed to be the surveillance tape. Id. at 454-55, 617 S.E.2d at 108. The robbers then ordered the clerk to return to the front desk and "act normal" while the robbers hid as a group of patrons arrived. Id. at 455, 617 S.E.2d at 108. When the clerk attempted to flee the desk area, the robbers leapt out, demanded money from the patrons, and ordered the patrons to the floor. Id. As this was occurring, a second group of patrons approached the lobby doors, noticed the robbery in progress, and attempted to walk away. Id. One of the robbers saw the second group of patrons, forced them to enter the lobby, and robbed them. Id. On appeal to this Court, the defendant argued the trial court erred in denying his motions to dismiss the kidnapping charges related to the first group of patrons, the second group of patrons, and the motel clerk on the bases that the kidnappings were not separate *114 from the robberies and the charges violated double jeopardy. Id. at 457-61, 617 S.E.2d at 109-11. Upon review, this Court recognized that " 'the key question in a double jeopardy analysis is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that inherent in the underlying felony itself.' " Id. at 457, 617 S.E.2d at 109 (quoting State v. Muhammad, 146 N.C.App. 292, 295, 552 S.E.2d 236, 237 (2001) ) (brackets omitted). This Court then reversed the defendant's kidnapping convictions, holding that the first group of patrons was not exposed to any danger greater than that inherent in the robberies for which the defendant was convicted, id. at 458, 617 S.E.2d at 109-10, the second group of patrons "had already been exposed to the danger inherent in the robbery as they approached the [m]otel door[ ]" and "their movement into the [m]otel lobby [was nothing] more than a mere technical asportation also inherent in the armed robbery[,]" id. at 459, 617 S.E.2d at 110 (internal quotation marks omitted), and the movement of the clerk to the break room did not expose the clerk "to a danger greater than and independent from that inherent in the robbery for which [the] defendant was already convicted." Id. at 460-61, 617 S.E.2d at 111.
On appeal to our Supreme Court from a dissent in this Court's Ripley opinion on the issue of whether the forced movement of the second group of patrons into the motel lobby could sustain a separate kidnapping conviction, our Supreme Court affirmed this Court's decision, concluding "the asportation of the [second group of patrons] from one side of the motel lobby door to the other was not legally sufficient to justify [the] defendant's convictions of second-degree kidnapping[ ]" because "[t]he moment [the] defendant's accomplice drew his firearm, the robbery with a dangerous weapon had begun. The subsequent asportation of the victims was 'a mere technical asportation' that was an inherent part of the robbery defendant and his accomplices were engaged in." Ripley, 360 N.C. at 340, 626 S.E.2d at 294.
In State v. Cartwright, the defendant was convicted of first-degree kidnapping, armed robbery, first-degree rape, and other offenses based on evidence tending to show that when the victim opened her house door, the defendant grabbed the victim's arm and forced the victim back into her kitchen, pulled a knife out of his pocket, demanded money, put the knife back in his pocket and attempted to choke the victim with a towel, struggled with the victim from the kitchen, through a hallway, and into the den, knocked the victim to the floor, attempted to smother the victim with a pillow, raped the victim, *528 demanded money again, followed *115 the victim down a hallway to the victim's bedroom where the victim gave the defendant a dollar, and then fled the victim's house. 177 N.C.App. 531, 532-33, 629 S.E.2d 318, 320-21, disc. rev. denied, 360 N.C. 578, 635 S.E.2d 902 (2006). On appeal, the defendant challenged the trial court's denial of his motion to dismiss the kidnapping charge for insufficient evidence and raised a double jeopardy argument. Id. at 534, 629 S.E.2d at 321. Addressing the trial court's denial of the defendant's motion to dismiss, this Court vacated the kidnapping conviction, explaining as follows:
With regards to armed robbery ... [,] [t]he victim's movement down the hallway is a mere asportation because the armed robbery began when defendant showed the knife to the victim in the kitchen and demanded money, and [the] defendant's movement between the kitchen, den, and bedroom did not expose the victim to a greater degree of danger....
With regards to rape, [the] defendant began and concluded the rape in the den. Because the crime of rape occurred wholly in the den, we find that there was insufficient evidence of confinement, restraint, or removal.
Id. at 537, 629 S.E.2d at 323. Although this Court explicitly stated it would not address the defendant's double jeopardy argument because it vacated the kidnapping charge due to insufficiency of the evidence, id., it is clear from the Court's explanation that the kidnapping conviction was vacated because the only confinement, restraint, or removal was that inherent in the armed robbery and rape, for which the defendant was convicted.
In State v. Payton, the defendant was convicted of first-degree burglary, two counts of robbery with a dangerous weapon, and two counts of second-degree kidnapping. 198 N.C.App. 320, 320-21, 679 S.E.2d 502, 502 (2009). The evidence was that during a burglary the defendant and two accomplices encountered the home owner and her daughter in the bathroom area and, at gun point, "instructed the women to move into the bathroom, lie on the floor, and not look at them." Id. at 321, 679 S.E.2d at 503. The burglar with a gun then remained outside the bathroom while the other two burglars retrieved the homeowner's purse. The burglars then ordered the victims not to look at them, closed the bathroom door, and removed a television from the bedroom as they left the house. Id. On appeal, this Court held that moving the victims from the bathroom area, "which was described as a foyer leading from the *116 bathroom to the bedroom," id., into the bathroom "was an inherent part of the robbery and did not expose the victims to a greater danger than the robbery itself." Id. at 328, 679 S.E.2d at 507. The Court described the movement of the women as "a 'technical asportation,' such as seen in Irwin, Ripley , and Cartwright ." Id.
In State v. Featherson, the defendant was convicted of robbery with a dangerous weapon, second-degree kidnapping, and conspiracy to commit armed robbery after she helped her boyfriend and a mutual friend rob the Bojangles restaurant where the defendant worked. 145 N.C.App. 134, 135-36, 548 S.E.2d 828, 829-30 (2001). During the robbery, the defendant's boyfriend forced the defendant and another employee to the floor and loosely bound them together with duct tape while the mutual friend forced the manager to the office and ordered her to open the safe. Id. at 135, 548 S.E.2d at 830. Although not specifically raised or argued on appeal, this Court addressed the sufficiency of the evidence supporting the defendant's conviction for kidnapping the employee who was bound to the defendant in the course of the robbery and held the trial court erred in denying the defendant's motion to dismiss the kidnapping charge. Id. at 139, 548 S.E.2d at 832. This Court reasoned that, where the employee was already in the same room where she was bound to the defendant and was bound to the defendant in such a manner as to allow them to escape quickly, "[the employee] was exposed to no greater danger than that inherent in the armed robbery itself, nor was she subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." Id. at 140, 548 S.E.2d at 832 (internal quotation marks and brackets omitted). Thus, "the restraint and movement of [the employee] was an inherent and integral part of the armed robbery[ ]"
*529 and "not sufficient to sustain a conviction for second-degree kidnapping." Id. at 139-40, 548 S.E.2d at 832.
Relying first on Cartwright, defendant contends the robberies in the present case began as soon as he and his accomplices entered the residence and ordered Cowles and Pina to turn over their cell phones. Consequently, defendant claims any movement or restraint thereafter occurred during the course of the robberies. Defendant then relies on Ripley and Irwin to argue that moving victims to the location of other victims or to the area where the stolen property was located is integral to the robbery. Lastly, defendant relies on Featherson and Payton to support his contention that the restraint of Cowles and Pina in the corner of the upstairs bedroom while the other intruders searched the residence was not independent of the robbery.
*117 While the movement and restraint of Cowles and Pina may have occurred during the course of all the robberies, we are not convinced that the removal of Cowles and Pina from downstairs to upstairs was integral to or inherent in the armed robberies of Cowles and Pina, or the armed robberies of Collins and Martin.
First, the evidence tends to show that the robberies, or attempted robberies, of Cowles and Pina took place entirely downstairs when the robbers demanded Cowles' and Pina's cell phones, to no avail. There is no evidence that any other items were demanded from Cowles or Pina at any other time and Cowles testified that nothing was taken from his person. Thus, it is difficult to accept defendant's argument that the movement of Cowles and Pina was integral to the attempted robberies of Cowles and Pina. We emphasize attempt because defendant was convicted of attempted robbery with a firearm of Cowles; defendant was acquitted of robbery with a firearm of Pina. In fact, the evidence in this case is clear that defendant and the other intruders entered the residence in search of Collins. In the light most favorable to the State, it appears the removal of Cowles and Pina from downstairs to the upstairs was neither integral in the robberies of them, nor the robberies of Collins and Martin.
Second, we find the removal of Cowles and Pina from downstairs to upstairs by defendant and the other intruders to be more significant than the movement of victims from one side of a motel lobby door to the other in Ripley or from a bathroom foyer into the adjoining bathroom in Payton . Therefore, we hold the present case is distinguishable from those cases. We further note that in Ripley, the second group of patrons were robbed once they were forced into the motel lobby, Ripley, 172 N.C.App. at 455, 617 S.E.2d at 108, whereas in this case, nothing was taken from Cowles or Pina once they were moved upstairs. The present case is more similar to State v. Allred, 131 N.C.App. 11, 505 S.E.2d 153 (1998), and State v. Davidson, 77 N.C.App. 540, 335 S.E.2d 518 (1985). In Allred, the defendant was convicted on several kidnapping charges stemming from the armed robbery of a residence. 131 N.C.App. at 15, 505 S.E.2d at 156. On appeal, this Court addressed the kidnapping of the victims separately. Pertinent to this case, the Court held that the forced movement of one victim from his bedroom to the living room and the subsequent restraint of that victim on the couch was sufficient to uphold a kidnapping conviction. Id. at 21, 505 S.E.2d at 159. This Court reasoned that because nothing was taken from the victim and there was no evidence of an attempt to rob the victim, the removal of the victim "was not an integral part of any robbery committed against him, but a *118 separate course of conduct designed to prevent [the victim] from hindering [the] defendant and his accomplice from perpetrating the robberies against the other occupants." Id. In so holding in Allred, this Court cited its decision in Davidson, in which this Court upheld kidnapping convictions where, during the robbery of a clothing store, the defendant and accomplices forced a store owner, an employee, and a customer at gunpoint to go from the front of the store to a dressing room in the rear of the store, bound the victims, and robbed the victims of cash and jewelry before taking money from the cash register and merchandise from tables, and fleeing. Davidson, 77 N.C.App. at 541, 335 S.E.2d at 519. In holding *530 the trial court did not err in denying motions to dismiss the kidnapping charges, this Court reasoned that the removal of the victims to the dressing room was not an inherent and integral part of the robbery because none of the property was kept in the dressing room. Id. at 543, 335 S.E.2d at 520. This Court instead viewed the removal of the victims as a "separate course of conduct designed to remove the victims from the view of [a] passerby who might have hindered the commission of the crime." Id.
The reasoning in Allred and Davidson applies equally in the present case. Because nothing further was sought, nor taken, from Cowles and Pina after they were ordered to give up their cell phones, it appears the only reason to remove Cowles and Pina to the upstairs was to prevent them from hindering the subsequent robberies of Collins and Martin.
Third, we are not persuaded that Irwin and Ripley apply in this case. Defendant relies on Irwin and Ripley for the propositions that moving victims to an area where the property taken is located or to an area where other victims are located are inherent and integral parts of the robbery. Defendant's takeaways from those cases are imprecise and oversimplified. In Irwin, the Court made clear that the removal of the drugstore employee from the cash register area to the prescription counter in the back of the drugstore was an inherent and integral part of the attempted armed robbery because the defendant needed the employee to open a safe in order to complete the defendant's objective of obtaining drugs. 304 N.C. at 103, 282 S.E.2d at 446. In this case, there is no evidence that it was necessary to move Cowles and Pina upstairs to complete the robbery of Collins and Martin. In affirming this Court in Ripley, our Supreme Court held the movement of the second group of patrons from one side of the motel lobby door to the other was not legally sufficient to support separate kidnapping convictions because the robbery began the moment an accomplice drew a firearm and the movement of the second group of patrons "was 'a mere technical asportation' that *119 was an inherent part of the robbery defendant and his accomplices were engaged in." 360 N.C. at 340, 626 S.E.2d at 294. Yet, we find it significant that the second group of patrons in Ripley was robbed after they were moved into the lobby. There was no purpose in the present case to move Cowles and Pina upstairs besides to prevent them from hindering the robberies of Collins and Martin.
Lastly, we note that the removal of Cowles and Pina upstairs did subject them to greater danger. Although our Court has acknowledged that the display of a firearm or threatened use of a firearm does not subject the victims to greater danger than that inherent in an armed robbery, see Ripley, 172 N.C.App. at 457-58, 617 S.E.2d at 109, the evidence here is that the other intruders assaulted the victims with handguns after Cowles and Pina were escorted upstairs. Thus, in the light most favorable to the State, Cowles and Pina were subjected to greater danger as a result of their removal to the upstairs of the residence.
III. Conclusion
In the light most favorable to the State, the evidence in this case is sufficient to sustain the separate second-degree kidnapping convictions. Thus, the trial court did not err in denying defendant's motions to dismiss.
NO ERROR.
Judge STEPHENS concurs.
Judge HUNTER, JR., dissents.

In the event we determined defendant's general motions to dismiss at trial did not preserve this issue for appeal, defendant additionally asserts an ineffective assistance of counsel argument. The State, however, specifically responds that "[it] does not dispute that [d]efendant preserved this issue for review." Upon review of the record, we think there is a question whether defendant's motions preserved this specific issue for appeal. Yet, given that the State concedes the issue is preserved and defendant has asserted an ineffective assistance of counsel argument in the alternative, we invoke Rule 2 of the North Carolina Rules of Appellate Procedure out of an abundance of caution and address the merits of the issue. See State v. Marion, 233 N.C.App. 195, 201-04, 756 S.E.2d 61, 67-68, disc. rev. denied, 367 N.C. 520, 762 S.E.2d 444-45 (2014) (electing to review the defendant's sufficiency of the evidence argument pursuant to Rule 2 where the issue was not preserved for appeal but defendant also brought forward an ineffective assistance of counsel claim based on her trial counsel's failure to make a motion to dismiss).