STATE OF NORTH CAROLINA v. ANTONIO LAMARQUISA RIPLEY

No. COA04-924

(Filed 16 August 2005)

**1. Constitutional Law— double jeopardy—robbery and kidnapping—standard**

In determining whether a movement or restraint during an armed robbery can support an independent charge of kidnapping, so that convictions for both do not violate double jeopardy, the question is whether the defendant's actions exposed the victim to a danger greater than that inherent in the armed robbery and to the kind of danger and abuse the kidnapping statute was designed to prevent.

**2. Constitutional Law— double jeopardy—robbery and kidnapping—movement during robbery**

Defendant was subjected to double jeopardy by being convicted of armed robbery and kidnapping arising from a string of hotel robberies, and his second-degree kidnapping convictions were reversed. The victims were moved from hotel parking lots to lobbies, were instructed not to move while others were robbed, or were moved from the front desk to a manager's office or a break room while defendant and his accomplices sought surveillance tapes or access to a safe. The victims were not exposed to harm beyond the threatened use of a firearm inherent in the armed robbery or to the kind of danger the kidnapping statute was designed to represent.

Judge TYSON concurring part, dissenting in part.

Appeal by defendant from judgment entered 19 March 2004 by Judge Jack. W. Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 12 April 2005.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Thomas R. Sallenger for defendant-appellant.*

ELMORE, Judge.

Antonio Lamarquisa Ripley (defendant) was convicted of fifteen counts of second degree kidnapping, seven counts of robbery with a

firearm, and three counts of attempted robbery with a firearm. Defendant appeals nine of his convictions for second degree kidnapping. For the reasons that follow, we vacate these convictions.

I.

At trial, the State presented evidence tending to show that, on 30 May 2003, the then thirty-two-year-old defendant gathered together four young men, who were then all under the age of eighteen, and drove them from Wilmington to Jacksonville, North Carolina in his SUV. Upon arriving at the Hampton Inn in Jacksonville sometime after 9:00 p.m., three of the four departed the SUV and targeted a hotel guest, Mr. Donald Annoni (Mr. Annoni). Mr. Annoni and his son Stephen were returning to their car to retrieve some pillows when Mr. Annoni noticed someone on the ground under an adjacent car. Two black males wearing masks and brandishing handguns then approached and instructed him to proceed to his car with his hands up. Mr. Annoni and Stephen were ordered at gunpoint to climb into the trunk of the vehicle. After roughly ten to fifteen minutes during which they could hear the car being searched, the Annonis were freed when the perpetrators opened the trunk by remote and threw the keys back to Mr. Annoni.

According to the evidence presented at trial, the criminal spree of defendant and his associates continued into the lobby of the Hampton Inn, where Ms. Tamara Basden (Ms. Basden) and Mr. Sean Barnett (Mr. Barnett) were managing the front desk. Upon entering the lobby, three armed men ordered everyone to the floor. The lobby contained three patrons, including Ms. Lacee Zornes, who would testify at trial for the State. One robber pointed a gun at Mr. Barnett's head as the cash drawer was emptied of its contents, approximately $260.00. Mr. Barnett was then removed to the manager's office to join Ms. Basden, who had previously been led to the office, and both were questioned as to the whereabouts of surveillance cameras and keys to the hotel safe. The robbers took a cell phone off of Mr. Barnett and departed without gaining access to either the safe or any surveillance devices.

The State's evidence at trial further showed that defendant then drove his criminal contingent to the Extended Stay America Motel, also in Jacksonville. As had occurred at the Hampton Inn, three masked and armed men entered the lobby and approached the front desk. Laketria Sharpless (Ms. Sharpless), the front desk clerk, immediately supplied the money demanded from the cash drawer, which totaled roughly $300.00. After she heard the robbers ask about a tape,

Ms. Sharpless led one of the robbers to the break room where she ejected from a VCR what she believed to be the surveillance tape.[1] Ordered to stay on the floor in the break room, Ms. Sharpless was initially able to observe the men searching the lobby via a closed-circuit television. The men then ordered Ms. Sharpless to return to the front desk and "act normal." Ms. Sharpless later reported the loss of $60.00 from her own purse.

The robbers hid as the Rodriguez family entered the lobby with friends Alvaro Perez (Mr. Perez) and Peter Lucas (Mr. Lucas). Ms. Sharpless engaged in small talk with the Rodriguez family while she attempted to find a way to flee, but, when she left the front desk, the men leapt out and demanded money of all persons present. The men obtained $250.00 from Mr. Ricardo Rodriguez, Sr. (Mr. Rodriguez), $250.00 from Mr. Perez, and $200.00 from Mr. Lucas. The two young Rodriguez children, as well as Ms. Rodriguez, were ordered at gunpoint to get onto and remain on the floor.

Another group of hotel guests with friends would then enter the scene from the parking lot. As Tracy and Dennis Long (Mr. and Ms. Long) approached the lobby door with their friends, Skylar and Adrian Panter (Mr. and Ms. Panter), they observed the robbery in progress and attempted to turn and walk away. But, when one of the armed robbers saw the group, he forced them to enter the lobby where they were told to empty their wallets and purses. These efforts, however, yielded $8.00 from Ms. Long.

Police began arriving as the three perpetrators returned to defendant's SUV in which he and the fourth youth, fifteen-year-old Jonathan Battle (Mr. Battle), had been waiting. They deposited the money and guns in the car. Given the number of police officers in the area, defendant told the three young robbers to get out of the vehicle and that he would pick them up later. The three then ran into a field where they were apprehended by the police. Defendant and Mr. Battle abandoned efforts to retrieve their colleagues when it became apparent that the authorities had captured them. The pair stopped for food at a Burger King and tossed away some items from the night's crimes. The police pulled over the SUV and arrested defendant and Mr. Battle just outside of Wilmington.

Mr. Battle and another accomplice, Jamar D. McCarthur, testified as to how defendant instructed them on conducting a robbery at the

1. Ms. Sharpless testified at trial that her belief was mistaken and that the tape was not for the surveillance camera but was in fact a video on housekeeping instructions.

hotels. At the close of the State's evidence, defendant moved to dismiss the second degree kidnapping convictions and argued that in each case any movement of the victim was not an offense separate and independent from the robbery of these victims. The court denied defendant's motion to dismiss the kidnapping charges. Defendant chose to present no evidence at trial. Upon defendant's conviction of the aforementioned crimes, the trial court sentenced defendant to four consecutive terms of imprisonment of 117 to 150 months. Defendant appeals.

## II.

**[1]** On appeal, defendant contends that the trial court erroneously denied his motions to dismiss charges of second degree kidnapping with respect to certain victims. Defendant argues that being convicted of both the robbery offense and the kidnapping offense with respect to these victims violates his constitutional protection against double jeopardy.

N.C. Gen. Stat. § 14-39 establishes the offense of kidnapping in pertinent part as follows:

Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over . . . shall be guilty of kidnapping if such confinement, restraint, or removal is for the purpose of . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person . . .

N.C. Gen. Stat. § 14-39(a) (2003). In *State v. Fulcher*, our Supreme Court recognized it as "self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim." 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Thus, the Court in *Fulcher* "construe[d] the word 'restrain,' as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony." *Id.*; *see also State v. Irwin*, 304 N.C. 93, 102-03, 282 S.E.2d 439, 446 (1981). In *Irwin*, a store employee was ordered at knifepoint to proceed from the cash register to the back of the store so that the defendant and his accomplice could gain access to the drug prescription counter and the store's safe. 304 N.C. at 103, 282 S.E.2d at 446. Our Supreme Court

found that this movement was "a mere technical asportation," which did not support an independent charge of kidnapping consistent with the defendant's protection against double jeopardy. *Id.*

In determining whether a movement or restraint during an armed robbery can support an independent charge of kidnapping, we ask whether the defendant's actions exposed the victim to a "greater danger than that inherent in the armed robbery itself" and to "the kind of danger and abuse the kidnapping statute was designed to prevent." *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446. Thus, as recognized by this Court in *State v. Muhammad*, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001), "the key question [in a double jeopardy analysis] is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that inherent in the underlying felony itself." *Id.* at 295, 552 S.E.2d at 237.

## III.

**[2]** Defendant first argues that being convicted of both second degree kidnapping and robbery with a firearm with respect to Mr. Rodriguez violates his constitutional protection from double jeopardy. We agree.

Mr. Rodriguez testified that he entered the lobby with his family and friends and that the men then jumped out from behind the counter. He stated that he thought the robbery was a joke at first, but that one of the robbers unchambered a gun to show it was loaded. Mr. Rodriguez testified that after seeing that the gun was loaded, he backed away from the counter and got down onto the floor. He further testified that after he gave the robbers the money from his wallet, another group of guests entered the lobby and were immediately robbed.

The State contends that restraint of Mr. Rodriguez went beyond that necessary to complete a robbery because he was restrained after his own robbery and was forced to wait as the other patrons were also robbed. However, the State's position deviates from established case law, in particular our Supreme Court's decision in *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998). In *Beatty*, a defendant's conviction for second degree kidnapping was affirmed where the assailants bound the victim's wrists with duct tape and kicked him in the back twice. 347 N.C. at 559, 495 S.E.2d at 370. The Court stated that this act of restraint "increased the victim's helplessness and vulnerability beyond what was necessary to enable him and his com-

rades to rob the restaurant." *Id.* (citation omitted). With respect to another victim, however, the Court reversed the defendant's conviction of second degree kidnapping where that victim was simply held at gunpoint during the robbery but was not injured in any way. *Id.* at 560, 495 S.E.2d at 370.

The Supreme Court's holding in *Beatty* addresses the State's argument in the case *sub judice* that restraint of a victim by threatened use of a firearm during an armed robbery of another party necessarily increases the danger to that victim. *Beatty* rejected this possibility, and therefore controls on this issue. We refuse the State's invitation to allow a separate kidnapping charge to arise out of any armed robbery in which the perpetrator does more than simply display a weapon, such as instructing the victim not to move while he undertakes to rob other victims. No matter how reprehensible we find the actions of defendant and his agents, we cannot hold that the restraint exposed the victim to a "greater danger than that inherent in the armed robbery itself." *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

## IV.

Defendant next contends that his convictions for second degree kidnapping and robbery with a firearm with respect to Peter Lucas and Alvaro Perez violate his protection against double jeopardy. We agree with defendant that both second degree kidnapping convictions must be reversed.

Both men entered the lobby with the Rodriguez family. They were soon thereafter instructed to get onto the floor and surrender their money. The State again contends on appeal that the restraint of these men was unnecessary because it extended to include the time needed to conduct the robbery of the second group of guests to enter the lobby. As discussed above with respect to the restraint of Mr. Rodriguez, the threatened use of a firearm upon these two victims did not expose them to any danger greater than that inherent in the robberies for which defendant has been convicted. Accordingly, defendant's convictions of second degree kidnapping with respect to Mr. Lucas and Mr. Perez must be reversed.

## V.

We next consider defendant's argument that his convictions for second degree kidnapping with respect to Mr. and Ms. Long and Mr. and Ms. Panter violate double jeopardy. Defendant was convicted of second degree kidnapping and robbery with a firearm with respect to

Ms. Long; he was convicted of second degree kidnapping and attempted robbery with a firearm with respect to Mr. Long and Mr. and Ms. Panter. We agree with defendant that all four second degree kidnapping convictions must be reversed.

Ms. Long testified that as her party approached the lobby of the hotel, they observed a robbery in progress. When they attempted to turn around, a robber holding a gun ordered them to go inside and empty their wallets. The State contends that it was not necessary to move these four victims inside the hotel lobby in order to commit armed robbery against them. Specifically, the State argues that the robbers already had control of the victims prior to them entering the lobby. However, the State has failed to show that the removal was separate from the robbery or that it increased the danger beyond that inherent in the robbery. Significantly, the victims were not physically injured, nor were they subjected to restraint beyond that of the threatened use of a firearm. *Cf. State v. Smith*, 359 N.C. 199, 213, 607 S.E.2d 607, 618 (2005) (after grabbing the victim by the neck and rendering him unconscious, the defendant was free to steal the items; the additional steps of binding the victim's wrists and ankles and taping his mouth were separate from the robbery and exposed the victim to a greater danger).

Here, the victims had already been exposed to the danger inherent in the robbery as they approached the hotel door. We decline to equate the fact of their movement into the hotel lobby as anything more than a "mere technical asportation" also inherent in the armed robbery. *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

## VI.

Next, defendant contends that his convictions for second degree kidnapping and robbery with a firearm with respect to Ms. Basden violate his protection against double jeopardy. We agree.

The State's evidence indicates that the robbers took the money from the cash register and then removed Ms. Basden to the manager's office where they demanded the keys to the safe. Mr. Barnett was then also led into the office, and the robbers started asking about the location of surveillance cameras.

The State argues that the facts are similar to those of *State v. Warren*, 122 N.C. App. 738, 471 S.E.2d 667 (1996), wherein this Court affirmed the defendant's second degree kidnapping convictions. We disagree. In *Warren*, the defendant and his accomplice forced two

victims from the front of the store into storage areas in the rear of the store. *Id.* at 741, 471 S.E.2d at 669. Additionally, the victims were physically abused: the defendant broke one victim's nose and hit him on the head so forcefully that he required fourteen to twenty staples to seal the wound; and either the defendant or his accomplice choked the same victim with a chain until he was unconscious. *Id.* This Court held that the victims "were exposed to greater danger than that inherent in the armed robbery and were subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Id.* (citing *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446).

The facts of the instant case are not comparable, as Ms. Basden was not physically attacked. Notably, she was not bound or terrorized after being removed to the back office. *Cf. State v. Thompson*, 129 N.C. App. 13, 16, 497 S.E.2d 126, 128 (1998) (victims forced into meat room in rear of store, tied up, and told that they would be killed if any one of them moved; when one victim attempted to turn around, assailant held gun to back of her head); *State v. Davidson*, 77 N.C. App. 540, 543, 335 S.E.2d 518, 520 (1985) (victims removed to dressing room in back of store and bound with tape), *disc. review denied*, 315 N.C. 393, 338 S.E.2d 882 (1986). Thus, Ms. Basden was not exposed to the kind of danger and abuse that the kidnapping statute was designed to prevent. Rather, the only harm Ms. Basden was exposed to was the harm inherent in the armed robbery, the threatened use of a firearm. Accordingly, we hold that Ms. Basden's removal was a mere technical asportation inherent in the armed robbery.

VII.

Finally, defendant argues that his convictions for second degree kidnapping and robbery with a firearm with respect to Ms. Sharpless violate double jeopardy. Once again, we agree.

The State's evidence shows that one of the robbers proceeded with Ms. Sharpless to the break room to retrieve the supposed surveillance tape and instructed her to remain there. A few minutes later, the robbers then led her back to the front desk and ordered her to "act normal." When Ms. Sharpless attempted to flee, the men jumped out of hiding and proceeded to rob the patrons present.

Once again, there is no evidence that Ms. Sharpless was exposed to any danger separate from that inherent in the robbery or the kind that the kidnapping statute was designed to prevent. She was not bound or physically injured in any way while restrained in the break

room. Also, we cannot ignore the fact that Ms. Sharpless volunteered the information to the robbers that there was a surveillance tape and that she knew where it was located. Indeed, Ms. Sharpless testified that she led one of the robbers into the break room. Under these circumstances, we cannot hold that Ms. Sharpless was exposed to a danger greater than and independent from that inherent in the robbery for which defendant was already convicted.

## VIII.

For the above stated reasons, we reverse defendant's second degree kidnapping convictions with respect to the following victims: Ricardo Rodriguez, Sr., Peter Lucas, Alvaro Perez, Adrian Panter, Skylar Panter, Tracy Long, Dennis Long, Tamara Basden, and Laketria Sharpless (Nos. 03 CRS 10254, 10257, 10258, 10248, 10249, 10252, 10251, 10245, and 10247). Accordingly, this case is remanded to the Superior Court, Onslow County, for entry of an order arresting judgment on defendant's aforementioned convictions.

Reversed and remanded in part, no error in part.

Judge TYSON concurs in part; dissents in part.

Judge WYNN concurs.

TYSON, Judge concurring in part, dissenting in part.

I concur in the portion of the majority's opinion reversing defendant's second-degree kidnapping convictions with respect to: (1) Ricardo Rodriguez, Sr., 03 CRS 10254; (2) Peter Lucas, 03 CRS 10257; (3) Alvaro Perez, 03 CRS 10258; (4) Tamara Basden, 03 CRS 10245; and (5) Laketria Sharpless, 03 CRS 10247.

I respectfully dissent from the majority's reversal of defendant's convictions for second-degree kidnapping of: (1) Adrian Panter, 03 CRS 10248; (2) Skylar Panter, 03 CRS 10249; (3) Tracy Long, 03 CRS 10252; and (4) Dennis Long, 03 CRS 10251.

## I. Movement Inherent and Integral to Robbery

The majority's opinion holds the movement of the Longs and Panters by the masked man from outside in the parking lot to inside the hotel lobby was inherent in the armed robbery and not sufficient to support the second-degree kidnapping convictions. I disagree.

Numerous precedents recognize a clear distinction between a defendant's asportation of a victim necessary to complete a crime, other than kidnapping, and removal of a victim that is incidental to the commission of the crime. *State v. Davidson*, 77 N.C. App. 540, 543, 335 S.E.2d 518, 520 ("Since none of the property was kept in the dressing room, it was not necessary to move the victims there in order to commit the robbery. Removal of the victims to the dressing room thus was not an inherent and integral part of the robbery. Rather, . . . [defendant engaged in] a separate course of conduct designed to remove the victims from the view of passersby who might have hindered the commission of the crime."), *disc. rev. and cert. denied*, 314 N.C. 670, 337 S.E.2d 583 (1985), *disc. rev. denied*, 315 N.C. 393, 338 S.E.2d 882 (1986); *State v. Joyce*, 104 N.C. App. 558, 567, 410 S.E.2d 516, 521 (1991) ("All victims in the case at bar were moved from one room to another room where they were confined. The removals were not an integral part of the crime nor necessary to facilitate the robberies, since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken."), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992); *State v. Warren*, 122 N.C. App. 738, 741, 471 S.E.2d 667, 669 (1996) ("the removals by defendant were not an integral part of the crime nor necessary to facilitate the robbery. Indeed . . . the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken." (citation omitted)).

Our Courts have consistently applied this analysis to other crimes committed in conjunction with a kidnapping. *See State v. Newman and State v. Newman*, 308 N.C. 231, 239-40, 302 S.E.2d 174, 181 (1983) ("Removal of [the victim] from her automobile to the location where the rape occurred was not such asportation as was inherent in the commission of the crime of rape. Rather, it was a separate course of conduct designed to remove her from the view of a passerby who might have hindered the commission of the crime."); *State v. Walker*, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987) ("Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape."); *State v. Mebane*, 106 N.C. App. 516, 532, 418 S.E.2d 245, 255 ("[R]estraint, confinement, and asportation of a rape victim may constitute kidnapping if it is a separate, complete act, independent of and apart from the rape."), *disc. rev. denied*, 332 N.C. 670, 424 S.E.2d 414 (1992).

Here, the evidence shows two couples were returning to the hotel after dinner when Mrs. Long noticed a robbery in progress in the lobby. All four persons attempted to run when one of the masked men exited the hotel and forced them inside at gunpoint, ordered them to their knees, and demanded their money. The masked men could have robbed the Longs and the Panters outside of the hotel. The money and valuables taken from them were located on their persons, not inside the hotel. It was not necessary to move them inside the hotel, the movement was not "an inherent and integral part" of the armed robbery, and the victims were restrained in the hotel lobby, where the robbery was accomplished. *Davidson*, 77 N.C. App. at 543, 335 S.E.2d at 520. Instead, the masked man forced them inside into a more secretive location to commit the crime. *See id.* ("Since none of the property was kept in the dressing room, it was not necessary to move the victims there in order to commit the robbery. Removal of the victims to the dressing room thus was not an inherent and integral part of the robbery. Rather, . . . it was a separate course of conduct designed to remove the victims from the view of passersby who might have hindered the commission of the crime.").

The majority's opinion cites *Irwin* to equate the movement of the four victims inside the hotel as nothing more than a "mere technical asportation." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981). My review of *Irwin* shows the defendant and an accomplice forced a drugstore employee to walk from her position near the fountain cash register to the back of the store where the prescription counter and safe were located. *Id.* at 96-97, 282 S.E.2d at 442. Our Supreme Court reversed the kidnapping conviction due to the employee's removal to the back of the store was "an inherent and integral part of the attempted armed robbery," since the employee was needed to open the safe. *Id.* at 103, 282 S.E.2d at 446. *Irwin* does not mandate defendant's convictions for kidnapping the Panters and the Longs be vacated. Numerous and consistent precedents cited above support a holding of no error for defendant's kidnapping of the Longs and the Panters.

## II. Conclusion

The movement of the Longs and the Panters from outside the hotel to its lobby was not "an inherent and integral part" of the armed robberies and was a sufficient and separate asportation apart from the robbery to support convictions for second-degree kidnapping. I find no error in defendant's convictions for second-

degree kidnapping, 03 CRS 10248, 03 CRS 10249, 03 CRS 10251, and 03 CRS 10252. I respectfully dissent.