IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-279

 Filed: 1 March 2016

Forsyth County, Nos. 13 CRS 10929-31, 55189-90

STATE OF NORTH CAROLINA

 v.

DONALD LEE CURTIS

 Appeal by defendant from judgments entered 12 March 2014 by Judge Ronald

E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals

23 September 2015.

 Attorney General Roy Cooper, by Special Deputy Attorney General Katherine A.
 Murphy, for the State.

 Patterson Harkavy LLP, by Narendra K. Ghosh, for defendant-appellant.

 McCULLOUGH, Judge.

 Donald Lee Curtis (“defendant”) appeals from judgments entered in

accordance with a sentencing agreement reached after a jury found him guilty on one

count of attempted robbery with a firearm, one count of possession of a firearm by a

felon, one count of first-degree burglary of a dwelling house, two counts of robbery

with a firearm, two counts of assault with a deadly weapon, and two counts of second-

degree kidnapping. For the following reasons, we find no error.

 I. Background
 STATE V. CURTIS

 Opinion of the Court

 In the early morning hours of 30 April 2013, three armed black males, two with

handguns and one with a shotgun, busted through the door of a residence at 2400

Harper Road in Clemmons where Megan Martin and Refeigo Pina lived. At the time

of the break in, Christopher Cowles and Justin Collins were also at the residence.

Cowles was with Pina in the downstairs living room where the intruders entered

learning how to play Pina’s guitar. Justin Collins and Martin were asleep in the

upstairs bedroom.

 As the intruders entered, they asked where Collins was, instructed each other

to get the cell phones, and ordered Cowles and Pina to put their hands up. Cowles

attempted to quickly dial 911 before he tossed his cell phone to the side of the couch

that he and Pina were sitting on. The intruders did not get either Cowles’ or Pina’s

cell phones. Cowles recognized the two intruders with handguns (the “other

intruders”) and inquired why they were doing what they were doing. The third

intruder, whom Cowles did not know but whom Cowles was later able to identify as

defendant with 100% certainty, then placed his shotgun in Cowles’ face and

threatened to shoot Cowles if Cowles was not quiet. Pina was held at gunpoint by

one of the other intruders while the third intruder looked around for Collins. Upon

repeated questioning concerning Collins’ whereabouts, Cowles told the intruders that

Collins was upstairs.

 -2-
 STATE V. CURTIS

 Opinion of the Court

 The intruders then ushered Cowles and Pina upstairs with guns to their backs.

Cowles and Pina did not go upstairs voluntarily. Once upstairs, Cowles cut the lights

on and tapped Collins on the foot to wake him up. As Collins was waking up, one of

the other intruders pulled the covers back and struck Collins on the side of the head

with a handgun. Martin was awakened by the commotion and was frantic. The

intruders directed Cowles, Pina, Collins, and Martin into the corner of the bedroom

and told them not to move. As they were moving to the corner, one of the other

intruders struck Pina in the face with a handgun.

 Defendant held the shotgun pointed towards Cowles, Pina, Collins, and Martin

while the other intruders tore the bedroom apart. The other intruders took Collins’

cellphone and wallet with approximately $2,000 in it from the nightstand, took cash

from Martin’s purse, and took Martin’s iPhone from the dresser.

 The other intruders then instructed defendant to stay with Cowles, Pina,

Collins, and Martin as the other intruders went back downstairs. Cowles could hear

lots of banging and smashing downstairs, like things were being destroyed.

Defendant stayed at the top of the stairs with the shotgun pointed at Cowles, Pina,

Collins, and Martin to keep them from moving for several minutes before telling them

not to move and backing down the stairs. The intruders then fled from the apartment,

slashing tires on Cowles’, Pina’s, Collins’, and Martin’s vehicles upon their exit. In

 -3-
 STATE V. CURTIS

 Opinion of the Court

addition to the items taken from upstairs, the intruders took a PlayStation 3, Pina’s

guitar, and car keys from downstairs.

 Besides Cowles’ identification of defendant, both Collins and Martin were

100% certain that defendant was the intruder with a shotgun. Collins recognized

defendant from time they spent incarcerated together.

 Based on the events of 30 April 2013, defendant was arrested and later indicted

by a Forsyth County Grand Jury on 23 September 2013 on three counts of robbery

with a dangerous weapon, one count of attempted robbery with a dangerous weapon,

two counts of second-degree kidnapping, one count of possession of a firearm by a

felon, one count of first-degree burglary, and two counts of assault with a deadly

weapon. Defendant’s case came on for trial in Forsyth County Superior Court before

the Honorable Judge Ronald E. Spivey on 10 March 2014.

 At the conclusion of defendant’s trial the jury returned verdicts finding

defendant guilty on all charges except the one count of robbery with a dangerous

weapon related to Pina. In accordance with a sentencing agreement reached between

defendant and the State, the trial court consolidated defendant’s nine convictions into

three Class D felonies and sentenced defendant at the top of the presumptive range

for each felony with a prior record level VI to three consecutive terms of 128 to 166

months imprisonment. The judgments were entered on 12 March 2014. Defendant

gave notice of appeal in open court following sentencing.

 -4-
 STATE V. CURTIS

 Opinion of the Court

 II. Discussion

 At the close of the State’s evidence, defendant moved to dismiss all of the

charges and the trial court denied defendant’s motion. Defendant then renewed his

motion after he decided not to put on any evidence in his own defense. The trial court

again denied defendant’s motion. Now on appeal, the only issue is whether the trial

court erred in denying defendant’s motion to dismiss the kidnapping charges.1

 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). “ ‘Upon defendant’s

motion for dismissal, the question for the Court is whether there is substantial

evidence (1) of each essential element of the offense charged, or of a lesser offense

included therein, and (2) of defendant’s being the perpetrator of such offense. If so,

the motion is properly denied.’ ” State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451,

455 (quoting State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), cert.

denied, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). “Substantial evidence is such relevant

 1 In the event we determined defendant’s general motions to dismiss at trial did not preserve
this issue for appeal, defendant additionally asserts an ineffective assistance of counsel argument.
The State, however, specifically responds that “[it] does not dispute that [d]efendant preserved this
issue for review.” Upon review of the record, we think there is a question whether defendant’s motions
preserved this specific issue for appeal. Yet, given that the State concedes the issue is preserved and
defendant has asserted an ineffective assistance of counsel argument in the alternative, we invoke
Rule 2 of the North Carolina Rules of Appellate Procedure out of an abundance of caution and address
the merits of the issue. See State v. Marion, __ N.C. App. __, __, 756 S.E.2d 61, 67-68, disc. rev. denied,
367 N.C. 520, 762 S.E.2d 444-45 (2014) (electing to review the defendant’s sufficiency of the evidence
argument pursuant to Rule 2 where the issue was not preserved for appeal but defendant also brought
forward an ineffective assistance of counsel claim based on her trial counsel’s failure to make a motion
to dismiss).

 -5-
 STATE V. CURTIS

 Opinion of the Court

evidence as a reasonable mind might accept as adequate to support a conclusion.”

State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). “In making its

determination, the trial court must consider all evidence admitted, whether

competent or incompetent, in the light most favorable to the State, giving the State

the benefit of every reasonable inference and resolving any contradictions in its

favor.” State v. Rose, 339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994), cert. denied,

515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

 In North Carolina, any person who unlawfully confines, restrains, or removes

from one place to another, any other person sixteen years old or older without the

consent of such person is guilty of kidnapping if the confinement, restraint, or

removal is for a purpose enumerated in the statute, including “[f]acilitating the

commission of any felony or facilitating flight of any person following the commission

of a felony[.]” N.C. Gen. Stat. § 14-39(a) (2015). “If the person kidnapped was

released in a safe place by the defendant and had not been seriously injured or

sexually assaulted, the offense is kidnapping in the second degree . . . .” N.C. Gen.

Stat. § 14-39(b).

 Recognizing potential double jeopardy concerns in cases where the restraint

necessary for kidnapping, that is “a restriction, by force, threat or fraud, without a

confinement[,]” State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978), is

essential to other charges, our Supreme Court explained as follows:

 -6-
 STATE V. CURTIS

 Opinion of the Court

 It is self-evident that certain felonies (e.g., forcible rape and
 armed robbery) cannot be committed without some
 restraint of the victim. We are of the opinion, and so hold,
 that [N.C. Gen. Stat. §] 14-39 was not intended by the
 Legislature to make a restraint, which is an inherent,
 inevitable feature of such other felony, also kidnapping so
 as to permit the conviction and punishment of the
 defendant for both crimes. To hold otherwise would violate
 the constitutional prohibition against double jeopardy. [To
 avoid the constitutional issue], we construe the word
 “restrain,” as used in [N.C. Gen. Stat. §] 14-39, to connote
 a restraint separate and apart from that which is inherent
 in the commission of the other felony.

 On the other hand, it is well established that two or more
 criminal offenses may grow out of the same course of
 action, as where one offense is committed with the intent
 thereafter to commit the other and is actually followed by
 the commission of the other (e. g., a breaking and entering,
 with intent to commit larceny, which is followed by the
 actual commission of such larceny). In such a case, the
 perpetrator may be convicted of and punished for both
 crimes. Thus, there is no constitutional barrier to the
 conviction of a defendant for kidnapping, by restraining his
 victim, and also of another felony to facilitate which such
 restraint was committed, provided the restraint, which
 constitutes the kidnapping, is a separate, complete act,
 independent of and apart from the other felony.

Id. at 523-24, 243 S.E.2d at 351-52. Thus, in Fulcher, the Court held there was “no

violation of the constitutional provision against double jeopardy in the conviction and

punishment of the defendant for . . . two crimes against nature and also for . . . two

crimes of kidnapping[,]” id. at 525, 243 S.E.2d at 352, because

 [t]he evidence for the State [was] clearly sufficient to
 support a finding by the jury that the defendant bound the
 hands of each of the two women, procuring their
 submission thereto by his threat to use a deadly weapon to

 -7-
 STATE V. CURTIS

 Opinion of the Court

 inflict serious injury upon them, thus restraining each
 woman within the meaning of [N.C. Gen. Stat. §] 14-39,
 and that his purpose in so doing was to facilitate the
 commission of the felony of crime against nature.

Id. at 524, 243 S.E.2d at 352. The Court further explained that, based on the

evidence, “the crime of kidnapping was complete, irrespective of whether the then

contemplated crime against nature even occurred[,]” and “[t]he restraint of each of

the women was separate and apart from, and not an inherent incident of, the

commission upon her of the crime against nature, though closely related thereto in

time.” Id.

 “In accordance with [the Court’s] analysis of the term ‘restraint’ [in Fulcher],

[the Court later] construe[d] the phrase ‘removal from one place to another’ [in N.C.

Gen. Stat. § 14-39] to require a removal separate and apart from that which is an

inherent, inevitable part of the commission of another felony.” State v. Irwin, 304

N.C. 93, 103, 282 S.E.2d 439, 446 (1981). The analysis applies equally to

“confinement” in N.C. Gen. Stat. § 14-39, which “connotes some form of imprisonment

within a given area, such as a room, a house or a vehicle.” Fulcher, 294 N.C. at 523,

243 S.E.2d at 351. More recently, the Court has explained that

 in determining whether a defendant's asportation of a
 victim during the commission of a separate felony offense
 constitutes kidnapping, [a trial court] must consider
 whether the asportation was an inherent part of the
 separate felony offense, that is, whether the movement was
 “a mere technical asportation.” If the asportation is a
 separate act independent of the originally committed
 criminal act, a trial court must consider additional factors

 -8-
 STATE V. CURTIS

 Opinion of the Court

 such as whether the asportation facilitated the defendant's
 ability to commit a felony offense, or whether the
 asportation exposed the victim to a greater degree of
 danger than that which is inherent in the concurrently
 committed felony offense.

State v. Ripley, 360 N.C. 333, 340, 626 S.E.2d 289, 293-94 (2006).

 In the present case, defendant was convicted of kidnapping Cowles and Pina.

Defendant now contends the trial court erred by not dismissing the kidnapping

charges for insufficiency of the evidence because Cowles and Pina were moved and

restrained only to the extent required for the armed robberies. Specifically,

defendant asserts that “[a]ll restraint and movement of Cowles and Pina occurred

during the course of the robberies and was integral to the robberies. There was no

independent restraint or removal that could support [defendant’s] convictions for

kidnapping Cowles and Pina.”

 In addition to Fulcher, supra, defendant relies on a number of cases in which

our appellate courts have overturned kidnapping convictions. The facts are

important in each case.

 In Irwin, the defendant was convicted of first degree felony murder, attempted

armed robbery, and kidnapping after a failed robbery of a drugstore occupied by the

owner and an employee. 304 N.C. at 95, 282 S.E.2d at 442. Pertinent to the present

case, during the course of the attempted robbery, the defendant’s accomplice “forced

[the employee] at knifepoint to walk from her position near the . . . cash register to

the back of the store in the general area of the prescription counter and safe.” Id. at

 -9-
 STATE V. CURTIS

 Opinion of the Court

103, 282 S.E.2d at 446. On appeal, defendant challenged the trial court’s denial of

his motion to dismiss the kidnapping charge and the Court reversed, noting that “[a]ll

movement occurred in the main room of the store[]” and holding that “[the employee’s]

removal to the back of the store was an inherent and integral part of the attempted

armed robbery[]” because “[t]o accomplish [the] defendant’s objective of obtaining

drugs it was necessary that either [the owner] or [the employee] go to the back of the

store to the prescription counter and open the safe.” Id. Thus, the removal of the

employee “was a mere technical asportation and insufficient to support conviction for

a separate kidnapping offense.” Id.

 In State v. Ripley, the defendant was convicted of seven counts of robbery with

a firearm, three counts of attempted robbery with a firearm, and fifteen counts of

second-degree kidnapping after a crime spree that included the armed robbery of a

an Extended Stay American Motel and patrons. 172 N.C. App. 453, 453-54, 617

S.E.2d 106, 107 (2005), aff’d., 360 N.C. 333, 626 S.E.2d 289 (2006). The evidence in

Ripley pertinent to the present case was that the defendant and an accomplice waited

in a vehicle outside the motel while three other accomplices entered the lobby of the

motel and ordered the front desk clerk to empty the cash drawer. Id. at 454, 617

S.E.2d at 107-08. The robbers then asked about surveillance and the clerk led one of

the robbers to the break room where the clerk handed over what she believed to be

the surveillance tape. Id. at 454-55, 617 S.E.2d at 108. The robbers then ordered the

 - 10 -
 STATE V. CURTIS

 Opinion of the Court

clerk to return to the front desk and “act normal” while the robbers hid as a group of

patrons arrived. Id. at 455, 617 S.E.2d at 108. When the clerk attempted to flee the

desk area, the robbers leapt out, demanded money from the patrons, and ordered the

patrons to the floor. Id. As this was occurring, a second group of patrons approached

the lobby doors, noticed the robbery in progress, and attempted to walk away. Id.

One of the robbers saw the second group of patrons, forced them to enter the lobby,

and robbed them. Id. On appeal to this Court, the defendant argued the trial court

erred in denying his motions to dismiss the kidnapping charges related to the first

group of patrons, the second group of patrons, and the motel clerk on the bases that

the kidnappings were not separate from the robberies and the charges violated double

jeopardy. Id. at 457-61, 617 S.E.2d at 109-11. Upon review, this Court recognized

that “ ‘the key question in a double jeopardy analysis is whether the kidnapping

charge is supported by evidence from which a jury could reasonably find that the

necessary restraint for kidnapping exposed the victim to greater danger than that

inherent in the underlying felony itself.’ ” Id. at 457, 617 S.E.2d at 109 (quoting State

v. Muhammad, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001)) (brackets

omitted). This Court then reversed the defendant’s kidnapping convictions, holding

that the first group of patrons was not exposed to any danger greater than that

inherent in the robberies for which the defendant was convicted, id. at 458, 617 S.E.2d

at 109-10, the second group of patrons “had already been exposed to the danger

 - 11 -
 STATE V. CURTIS

 Opinion of the Court

inherent in the robbery as they approached the [m]otel door[]” and “their movement

into the [m]otel lobby [was nothing] more than a mere technical asportation also

inherent in the armed robbery[,]” id. at 459, 617 S.E.2d at 110 (internal quotation

marks omitted), and the movement of the clerk to the break room did not expose the

clerk “to a danger greater than and independent from that inherent in the robbery

for which [the] defendant was already convicted.” Id. at 460-61, 617 S.E.2d at 111.

 On appeal to our Supreme Court from a dissent in this Court’s Ripley opinion

on the issue of whether the forced movement of the second group of patrons into the

motel lobby could sustain a separate kidnapping conviction, our Supreme Court

affirmed this Court’s decision, concluding “the asportation of the [second group of

patrons] from one side of the motel lobby door to the other was not legally sufficient

to justify [the] defendant's convictions of second-degree kidnapping[]” because “[t]he

moment [the] defendant's accomplice drew his firearm, the robbery with a dangerous

weapon had begun. The subsequent asportation of the victims was ‘a mere technical

asportation’ that was an inherent part of the robbery defendant and his accomplices

were engaged in.” Ripley, 360 N.C. at 340, 626 S.E.2d at 294.

 In State v. Cartwright, the defendant was convicted of first-degree kidnapping,

armed robbery, first-degree rape, and other offenses based on evidence tending to

show that when the victim opened her house door, the defendant grabbed the victim’s

arm and forced the victim back into her kitchen, pulled a knife out of his pocket,

 - 12 -
 STATE V. CURTIS

 Opinion of the Court

demanded money, put the knife back in his pocket and attempted to choke the victim

with a towel, struggled with the victim from the kitchen, through a hallway, and into

the den, knocked the victim to the floor, attempted to smother the victim with a

pillow, raped the victim, demanded money again, followed the victim down a hallway

to the victim’s bedroom where the victim gave the defendant a dollar, and then fled

the victim’s house. 177 N.C. App. 531, 532-33, 629 S.E.2d 318, 320-21, disc. rev.

denied, 360 N.C. 578, 635 S.E.2d 902 (2006). On appeal, the defendant challenged

the trial court’s denial of his motion to dismiss the kidnapping charge for insufficient

evidence and raised a double jeopardy argument. Id. at 534, 629 S.E.2d at 321.

Addressing the trial court’s denial of the defendant’s motion to dismiss, this Court

vacated the kidnapping conviction, explaining as follows:

 With regards to armed robbery . . .[,] [t]he victim's
 movement down the hallway is a mere asportation because
 the armed robbery began when defendant showed the knife
 to the victim in the kitchen and demanded money, and [the]
 defendant's movement between the kitchen, den, and
 bedroom did not expose the victim to a greater degree of
 danger. . . .

 With regards to rape, [the] defendant began and concluded
 the rape in the den. Because the crime of rape occurred
 wholly in the den, we find that there was insufficient
 evidence of confinement, restraint, or removal.

Id. at 537, 629 S.E.2d at 323. Although this Court explicitly stated it would not

address the defendant’s double jeopardy argument because it vacated the kidnapping

charge due to insufficiency of the evidence, id., it is clear from the Court’s explanation

 - 13 -
 STATE V. CURTIS

 Opinion of the Court

that the kidnapping conviction was vacated because the only confinement, restraint,

or removal was that inherent in the armed robbery and rape, for which the defendant

was convicted.

 In State v. Payton, the defendant was convicted of first-degree burglary, two

counts of robbery with a dangerous weapon, and two counts of second-degree

kidnapping. 198 N.C. App. 320, 320-21, 679 S.E.2d 502, 502 (2009). The evidence

was that during a burglary the defendant and two accomplices encountered the home

owner and her daughter in the bathroom area and, at gun point, “instructed the

women to move into the bathroom, lie on the floor, and not look at them.” Id. at 321,

679 S.E.2d at 503. The burglar with a gun then remained outside the bathroom while

the other two burglars retrieved the homeowner’s purse. The burglars then ordered

the victims not to look at them, closed the bathroom door, and removed a television

from the bedroom as they left the house. Id. On appeal, this Court held that moving

the victims from the bathroom area, “which was described as a foyer leading from the

bathroom to the bedroom,” id., into the bathroom “was an inherent part of the robbery

and did not expose the victims to a greater danger than the robbery itself.” Id. at 328,

679 S.E.2d at 507. The Court described the movement of the women as “a ‘technical

asportation,’ such as seen in Irwin, Ripley, and Cartwright.” Id.

 In State v. Featherson, the defendant was convicted of robbery with a

dangerous weapon, second-degree kidnapping, and conspiracy to commit armed

 - 14 -
 STATE V. CURTIS

 Opinion of the Court

robbery after she helped her boyfriend and a mutual friend rob the Bojangles

restaurant where the defendant worked. 145 N.C. App. 134, 135-36, 548 S.E.2d 828,

829-30 (2001). During the robbery, the defendant’s boyfriend forced the defendant

and another employee to the floor and loosely bound them together with duct tape

while the mutual friend forced the manager to the office and ordered her to open the

safe. Id. at 135, 548 S.E.2d at 830. Although not specifically raised or argued on

appeal, this Court addressed the sufficiency of the evidence supporting the

defendant’s conviction for kidnapping the employee who was bound to the defendant

in the course of the robbery and held the trial court erred in denying the defendant’s

motion to dismiss the kidnapping charge. Id. at 139, 548 S.E.2d at 832. This Court

reasoned that, where the employee was already in the same room where she was

bound to the defendant and was bound to the defendant in such a manner as to allow

them to escape quickly, “[the employee] was exposed to no greater danger than that

inherent in the armed robbery itself, nor was she subjected to the kind of danger and

abuse the kidnapping statute was designed to prevent.” Id. at 140, 548 S.E.2d at 832

(internal quotation marks and brackets omitted). Thus, “the restraint and movement

of [the employee] was an inherent and integral part of the armed robbery[]” and “not

sufficient to sustain a conviction for second-degree kidnapping.” Id. at 139-40, 548

S.E.2d at 832.

 - 15 -
 STATE V. CURTIS

 Opinion of the Court

 Relying first on Cartwright, defendant contends the robberies in the present

case began as soon as he and his accomplices entered the residence and ordered

Cowles and Pina to turn over their cell phones. Consequently, defendant claims any

movement or restraint thereafter occurred during the course of the robberies.

Defendant then relies on Ripley and Irwin to argue that moving victims to the

location of other victims or to the area where the stolen property was located is

integral to the robbery. Lastly, defendant relies on Featherson and Payton to support

his contention that the restraint of Cowles and Pina in the corner of the upstairs

bedroom while the other intruders searched the residence was not independent of the

robbery.

 While the movement and restraint of Cowles and Pina may have occurred

during the course of all the robberies, we are not convinced that the removal of Cowles

and Pina from downstairs to upstairs was integral to or inherent in the armed

robberies of Cowles and Pina, or the armed robberies of Collins and Martin.

 First, the evidence tends to show that the robberies, or attempted robberies, of

Cowles and Pina took place entirely downstairs when the robbers demanded Cowles’

and Pina’s cell phones, to no avail. There is no evidence that any other items were

demanded from Cowles or Pina at any other time and Cowles testified that nothing

was taken from his person. Thus, it is difficult to accept defendant’s argument that

the movement of Cowles and Pina was integral to the attempted robberies of Cowles

 - 16 -
 STATE V. CURTIS

 Opinion of the Court

and Pina. We emphasize attempt because defendant was convicted of attempted

robbery with a firearm of Cowles; defendant was acquitted of robbery with a firearm

of Pina. In fact, the evidence in this case is clear that defendant and the other

intruders entered the residence in search of Collins. In the light most favorable to

the State, it appears the removal of Cowles and Pina from downstairs to the upstairs

was neither integral in the robberies of them, nor the robberies of Collins and Martin.

 Second, we find the removal of Cowles and Pina from downstairs to upstairs

by defendant and the other intruders to be more significant than the movement of

victims from one side of a motel lobby door to the other in Ripley or from a bathroom

foyer into the adjoining bathroom in Payton. Therefore, we hold the present case is

distinguishable from those cases. We further note that in Ripley, the second group of

patrons were robbed once they were forced into the motel lobby, Ripley, 172 N.C. App.

at 455, 617 S.E.2d at 108, whereas in this case, nothing was taken from Cowles or

Pina once they were moved upstairs. The present case is more similar to State v.

Allred, 131 N.C. App. 11, 505 S.E.2d 153 (1998), and State v. Davidson, 77 N.C. App.

540, 335 S.E.2d 518 (1985). In Allred, the defendant was convicted on several

kidnapping charges stemming from the armed robbery of a residence. 131 N.C. App.

at 15, 505 S.E.2d at 156. On appeal, this Court addressed the kidnapping of the

victims separately. Pertinent to this case, the Court held that the forced movement

of one victim from his bedroom to the living room and the subsequent restraint of that

 - 17 -
 STATE V. CURTIS

 Opinion of the Court

victim on the couch was sufficient to uphold a kidnapping conviction. Id. at 21, 505

S.E.2d at 159. This Court reasoned that because nothing was taken from the victim

and there was no evidence of an attempt to rob the victim, the removal of the victim

“was not an integral part of any robbery committed against him, but a separate course

of conduct designed to prevent [the victim] from hindering [the] defendant and his

accomplice from perpetrating the robberies against the other occupants.” Id. In so

holding in Allred, this Court cited its decision in Davidson, in which this Court upheld

kidnapping convictions where, during the robbery of a clothing store, the defendant

and accomplices forced a store owner, an employee, and a customer at gunpoint to go

from the front of the store to a dressing room in the rear of the store, bound the

victims, and robbed the victims of cash and jewelry before taking money from the

cash register and merchandise from tables, and fleeing. Davidson, 77 N.C. App. at

541, 335 S.E.2d at 519. In holding the trial court did not err in denying motions to

dismiss the kidnapping charges, this Court reasoned that the removal of the victims

to the dressing room was not an inherent and integral part of the robbery because

none of the property was kept in the dressing room. Id. at 543, 335 S.E.2d at 520.

This Court instead viewed the removal of the victims as a “separate course of conduct

designed to remove the victims from the view of [a] passerby who might have

hindered the commission of the crime.” Id.

 - 18 -
 STATE V. CURTIS

 Opinion of the Court

 The reasoning in Allred and Davidson applies equally in the present case.

Because nothing further was sought, nor taken, from Cowles and Pina after they were

ordered to give up their cell phones, it appears the only reason to remove Cowles and

Pina to the upstairs was to prevent them from hindering the subsequent robberies of

Collins and Martin.

 Third, we are not persuaded that Irwin and Ripley apply in this case.

Defendant relies on Irwin and Ripley for the propositions that moving victims to an

area where the property taken is located or to an area where other victims are located

are inherent and integral parts of the robbery. Defendant’s takeaways from those

cases are imprecise and oversimplified. In Irwin, the Court made clear that the

removal of the drugstore employee from the cash register area to the prescription

counter in the back of the drugstore was an inherent and integral part of the

attempted armed robbery because the defendant needed the employee to open a safe

in order to complete the defendant’s objective of obtaining drugs. 304 N.C. at 103,

282 S.E.2d at 446. In this case, there is no evidence that it was necessary to move

Cowles and Pina upstairs to complete the robbery of Collins and Martin. In affirming

this Court in Ripley, our Supreme Court held the movement of the second group of

patrons from one side of the motel lobby door to the other was not legally sufficient

to support separate kidnapping convictions because the robbery began the moment

an accomplice drew a firearm and the movement of the second group of patrons “was

 - 19 -
 STATE V. CURTIS

 Opinion of the Court

‘a mere technical asportation’ that was an inherent part of the robbery defendant and

his accomplices were engaged in.” 360 N.C. at 340, 626 S.E.2d at 294. Yet, we find

it significant that the second group of patrons in Ripley was robbed after they were

moved into the lobby. There was no purpose in the present case to move Cowles and

Pina upstairs besides to prevent them from hindering the robberies of Collins and

Martin.

 Lastly, we note that the removal of Cowles and Pina upstairs did subject them

to greater danger. Although our Court has acknowledged that the display of a firearm

or threatened use of a firearm does not subject the victims to greater danger than

that inherent in an armed robbery, see Ripley, 172 N.C. App. at 457-58, 617 S.E.2d at

109, the evidence here is that the other intruders assaulted the victims with

handguns after Cowles and Pina were escorted upstairs. Thus, in the light most

favorable to the State, Cowles and Pina were subjected to greater danger as a result

of their removal to the upstairs of the residence.

 III. Conclusion

 In the light most favorable to the State, the evidence in this case is sufficient

to sustain the separate second-degree kidnapping convictions. Thus, the trial court

did not err in denying defendant’s motions to dismiss.

 NO ERROR.

 Judge STEPHENS concurs.

 - 20 -
 STATE V. CURTIS

 Opinion of the Court

Judge HUNTER, Jr., dissents.

 - 21 -
 No. COA15-279– State v. Curtis

 HUNTER, JR., Robert N., Judge, Dissenting.

 Defendant was indicted for two counts of second degree kidnapping. The first

indictment charges him with kidnapping Refegio Pina in connection with the

attempted armed robbery of Christopher Cowles’s cell phone. The second indictment

charges Defendant with kidnapping Christopher Cowles, Count I, “by using,

displaying, or threatening the use or display of a firearm and the defendant did

actually possess the firearm about the defendant’s person.” Count II is an assault

with a deadly weapon charge alleging Defendant struck Collins in the head with a

handgun. Count III is an assault with a deadly weapon charge alleging Defendant

struck Pina in the head with a handgun. While the attempted armed robbery against

Cowles took place in the downstairs of the home, the assaults against Collins and

Pina took place upstairs. In an indictment charging kidnapping, the State does not

have to “set forth . . . the specific felony that the kidnapping facilitated.” State v.

McRae, 231 N.C. App. 602, 752 S.E.2d 731 (2014) (citation omitted). Nonetheless, the

armed robbery of Cowles, and the assaults on Collins and Pina are contained in the

kidnapping indictments and we should examine their factual bases as predicates for

the kidnapping charges.

 As the majority opinion points out, all of the criminal acts took place within

Martin’s home. The majority makes a distinction that the asportation of Pina and

Cowles took place when they were moved from the downstairs living room to the
 STATE V. CURTIS

 HUNTER, JR., Robert N., J., dissent

upstairs bedroom. The majority contends these asportations were separate acts from

the attempted robbery against Cowles, which occurred downstairs, and the assault

on Collins, which occurred upstairs. In my view, these individual crimes occurred

throughout the home and were all part of an overall plan to rob Collins inside the

home. I dissent because our precedent holds that all criminal acts that are part of a

robbery transaction cannot be so carefully parsed as to create separate kidnapping

crimes. See State v. Irwin, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981); State v.

Ripley, 172 N.C. App. 453, 617 S.E.2d 106 (2005), affirmed, 360 N.C. 333, 626 S.E.2d

289 (2006). To adopt the majority’s view would make the technical asportation

defense under the double jeopardy clause incapable of consistent application and

render it judicially unmanageable.

 I agree that the majority has cited the appropriate test to be applied from

Ripley, 360 N.C. at 340, 626 S.E.2d at 293–94. It is clear the restraint of Pina and

Cowles “facilitated” Defendant’s ability to rob Collins. Defendant transferred Pina

and Cowles to prevent them from calling for help during the robbery. It is difficult to

understand how putting them upstairs while the robbery was in progress placed them

in a heightened danger. If one were to apply the rule advanced by the majority here,

it is clear Defendant was indicted for kidnapping Cowles in connection with

assaulting Collins upstairs by striking him in the head with a handgun. The analysis,

as I understand the majority opinion, would entitle Defendant to a have at least one

 2
 STATE V. CURTIS

 HUNTER, JR., Robert N., J., dissent

of the kidnapping judgments arrested. I think aptly the Supreme Court precedent

would require both kidnapping charges be arrested and we should remand the case

to the trial court for a new sentencing hearing.

 3