IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-22

Filed 17 October 2023

Mecklenburg County, Nos. 18CRS233449-50, 18CRS233485, 19CRS6128-31

STATE OF NORTH CAROLINA

v.

RAY SHAWN DANIELS

Appeal by defendant from judgment entered 16 May 2022 by Judge Lisa C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 October 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Stuart (Jeb) M. Saunders, for the State.*

*Richard J. Costanza, for the defendant-appellant.*

TYSON, Judge.

Ray Shawn Daniels ("Defendant") appeals from a final judgment entered upon the jury's verdicts for: (1) assault on a law enforcement official with firearm; (2) assault with a deadly weapon with intent to kill; (3) attempted first-degree murder; (4) assault with a deadly weapon with intent to kill inflicting serious injury; (5) attempted first-degree murder; (6) possession of a firearm by a felon; and (7) ten counts of attempted discharge of a firearm into an occupied moving vehicle. Our review reveals no error.

## I.   Background

Thomas Gilmore ("Gilmore"), a minor child, was waiting at a school bus stop with his friend during the morning of 20 September 2018. (Pseudonym used to protect identity of minor, per N.C. R. App. P. 42(b)). While waiting, Gilmore heard multiple gunshots, and he and his friend ran into a nearby convenience store. After entering the convenience store, Gilmore's friend realized Gilmore was bleeding and had been struck by a bullet. Gilmore was transported to the hospital by ambulance, where it was determined a bullet entered the back of his right thigh and passed through his leg, injuring his thigh and scrotum. Gilmore did not see who had shot him, nor did he observe anyone with a firearm nearby.

That same morning, Mecklenburg County Sheriff's Deputy Corey Thompson ("Deputy Thompson") was wearing his uniform and driving to an off-duty assignment in a marked patrol vehicle. Upon reaching the four-way intersection of West Sugar Creek Road and Reagan Drive, he heard gunshots. On his right, Deputy Thompson saw a crowd of fifteen to twenty people running towards him. He made a right-hand turn and observed a person on the ground and a man wearing a light-colored shirt and blue jeans standing over him.

Deputy Thompson activated his emergency equipment and saw the man, who had been standing, run and jump into the passenger side of a black Cadillac stopped a couple of feet away. The Cadillac sped away from the area, and Deputy Thompson initiated a chase of the vehicle. During the chase, the person occupying the front

passenger seat of the Cadillac began shooting a pistol at Deputy Thompson's patrol vehicle. At least ten shots were fired by the shooter. Deputy Thompson slowed to gain distance between himself and the Cadillac, so the projectiles would not hit him. Neither Deputy Thompson nor his patrol vehicle were struck by any bullets fired by the shooter inside the Cadillac. During the chase, the Cadillac reached speeds of "upwards of a hundred" miles per hour and weaved in and out of heavy traffic.

At one point during the chase, the Cadillac pulled into a gas station. A person, who was later identified by Deputy Thompson as the Defendant, attempted to exit the front passenger side of the Cadillac, but he realized Deputy Thompson was nearby. Defendant immediately re-entered the Cadillac, and the chase continued. After a few minutes, Deputy Thompson's superior officer advised him to cease pursuit of the Cadillac. Deputy Thompson stopped his pursuit and deactivated his patrol vehicle's emergency equipment. He had observed the Cadillac exit from Interstate 85. Deputy Thompson took the same exit and patrolled the area to search for the Cadillac. He located the Cadillac parked in a restaurant parking lot, unoccupied.

The same morning, Mecklenburg County Sheriff's Deputy Joseph Beckham ("Deputy Beckham") was on duty when he heard radio traffic indicating another deputy was involved in a chase. Deputy Beckham testified he activated his lights and sirens and drove to Interstate 85 South towards Graham Street, the suspect's last known location. As he approached the area, he heard radio traffic indicating Charlotte-Mecklenburg police officers were chasing a suspect through an ABC store

parking lot. He also saw an officer pointing across the street. He observed a black male with dreadlocks running away from that officer.

Deputy Beckham activated his patrol vehicle's emergency equipment and chased the suspect. He observed the suspect run behind a retail center and through some bushes. Deputy Beckham exited his vehicle, followed the suspect, and found him hiding in the bushes in a "surrendered position." Deputy Beckham held the suspect at gunpoint until other officers arrived. He handcuffed the suspect, who he later determined was unarmed. At trial, Deputy Beckham identified Defendant as the man he had arrested.

Deputy Beckham and his K-9 dog searched the immediate area for a gun. Other officers assisted, including Mecklenburg County Sheriff's Sergeant J.M. Whitmore ("Sergeant Whitmore"). The K-9 dog "found a track" and pursued it. Sergeant Whitmore was walking behind the dog, flipped open a green recycling bin, and found a bulletproof vest inside. A handgun was "sandwiched" in the vest, with an extended magazine protruding "out [of] the butt of the gun."

Forensic DNA testing was conducted on the firearm, which indicated a mixture of DNA from at least three individuals. The Defendant's DNA was the major profile contributor to the mixture. The State Crime Lab's analyst could not determine the identity of the other contributors. Additionally, forensic DNA testing was conducted on the bulletproof vest, also indicating a mixture of DNA from at least three individuals. Again, Defendant's DNA was the major profile contributor to the

mixture, and the Lab's analyst was unable to make any determinations regarding the other contributors.

Charlotte-Mecklenburg Police Officer Shannon Foster collected discharged cartridge casings and projectiles at various locations where the shootings had occurred. Gene Rivera, a Charlotte-Mecklenburg Police Department firearm examiner, examined the casings and projectiles and compared them with the recovered handgun. He determined ten of the projectiles were fired from the handgun, but the remaining two projectiles were too damaged to allow an accurate determination of whether or not they were fired from the recovered handgun. A jury convicted Defendant of all charges.

During the sentencing hearing, the parties stipulated that Defendant had been previously convicted of the federal offense of "carjacking," as codified at 18 U.S.C. § 2119. On 10 March 2009, Defendant pled guilty to Count I of the indictment, which tracked the language of 18 U.S.C. § 2119, alleging Defendant and others while:

> aiding and abetting each other, did knowingly and with
> intent to cause death and serious bodily harm, take a motor
> vehicle, that is, a 1989 Chevrolet Caprice, North Carolina
> Registration WVJ-8022, that had been transported,
> shipped, and received in interstate and foreign commerce,
> from the person and presence of another by force and
> violence by intimidation[.]

Defendant did not stipulate to the finding the carjacking conviction was substantially similar to common law robbery. In addition to the guilty verdicts, the jury also found as an aggravating factor the Defendant possessed a bulletproof vest

during the commission of these offenses.

The trial court gave the State and Defendant the opportunity to be heard on the issue of whether the offenses of carjacking and common law robbery are substantially similar. The trial court ruled the State had satisfied its burden of proving by a preponderance of the evidence that the offenses are substantially similar. The trial court stated:

> So U[.]S[.] code 18 – 18 U[.]S[.] code, sections 2119, the offense of carjacking is reflected in State's motion Exhibit 2. The description of that, under the code, is whoever takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person, or presence of another by force and violence, or by intimidation or attempts to do so. And I find that that description, those elements, are substantially similar to North Carolina offense of common law robbery, and that is reflected as a Class G felony on the worksheet[.]

The trial court's finding resulted in the assessment of four sentencing points. The assessment added up to ten sentencing points total. The trial court consolidated three of Defendant's offenses, including his convictions for attempted first-degree murder, assault on a law enforcement official with firearm, and assault with a deadly weapon with intent to kill, into one sentence. The trial court determined Defendant's attempted first-degree murder conviction would be sentenced under a Class B-1 felony with the addition of the sentencing enhancement. Defendant was sentenced as a prior record level IV offender to an active term of 300 to 372 months, with credit for 1,219 days served in custody.

The trial court also consolidated all of Defendant's other offenses into a separate judgment, which incorporated Defendant's convictions for attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a felon, and all ten counts of attempted discharge of a firearm into an occupied moving vehicle. Defendant's attempted first-degree murder conviction was classified as a Class B-2 felony "with the sentencing enhancement of a B-1." Defendant received a sentence of 300 to 372 months to run consecutively to his previous sentence. Defendant appeals.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.    Issue

Defendant argues the trial court erred as a matter of law when it determined Defendant's federal carjacking conviction was substantially similar to our state's common law robbery, which resulted in the Defendant being sentenced at a higher prior record level.

### A. Standard of Review

"The standard of review relating to the sentence imposed by the trial court is whether the sentence is supported by evidence introduced at the trial and sentencing hearing. However, 'the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of

law' requiring *de novo* review on appeal." *State v. Fortney*, 201 N.C. App. 662, 669, 687 S.E.2d 518, 524 (2010) (citations omitted).

Determining "whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law" and requires comparing the elements of the offenses. *Id.* at 671, 687 S.E.2d at 525 (citation omitted). The trial court "may accept a stipulation that the defendant in question has been convicted of a particular out-of-state offense and that this offense is either a felony or a misdemeanor under the law of that jurisdiction[,]" but it "may not accept a stipulation to the effect that a particular out-of-state conviction is 'substantially similar' to a particular North Carolina felony or misdemeanor[.]" *State v. Bohler*, 198 N.C. App. 631, 637-38, 681 S.E.2d 801, 806 (2009).

## B. Analysis

Our State's sentencing statute provides guidance to determine whether a defendant's conviction for an offense committed in another jurisdiction may be calculated in a defendant's prior record level:

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for

assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2021).

Our precedents define common law robbery as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Porter*, 198 N.C. App. 183, 186, 679 S.E.2d 167, 169-70 (2009) (quoting *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270 (1982)).

The federal carjacking statute provides:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
>    (1) be fined under this title or imprisoned not more than 15 years, or both,
>
>    (2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
>    (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (2018).

Both the federal carjacking statute and North Carolina's common law robbery require the forceful and violent taking of property. The federal carjacking statute

- 9 -

requires the taking to be accompanied "by force and violence or by intimidation[.]" *Id.* Our State's common law robbery statute similarly requires the taking of property "by means of violence or fear." *Porter,* 198 N.C. App. at 186, 679 S.E.2d at 169-70 (citation and internal quotation marks omitted).

### 1. *State v. Sanders*

Defendant, relying on *State v. Sanders*, argues our Supreme Court has adopted an elements comparison test when evaluating whether a foreign conviction is substantially similar to a North Carolina offense. *State v. Sanders*, 367 N.C. 716, 720, 766 S.E.2d 331, 334 (2014) ("The Court of Appeals has stated, and we agree, that '[d]etermination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense.'" (citation omitted)).

Defendant argues the similarity of the federal carjacking offense and common law larceny fails to pass the test outlined in *Sanders*. In *Sanders*, the Supreme Court found the Tennessee offense of domestic assault was not substantially similar to the North Carolina offense of assault on a female:

> [A] woman assaulting her child or her husband could be convicted of "domestic assault" in Tennessee, but could not be convicted of "assault on a female" in North Carolina. A male stranger who assaults a woman on the street could be convicted of "assault on a female" in North Carolina, but could not be convicted of "domestic assault" in Tennessee.

*Id.* at 721, 766 S.E.2d at 334.

The Court in *Sanders* found the two offenses were not substantially similar, because the conduct that is criminalized in each offense was different. *Id.* Domestic assault and assault on a female both involve two different, specifically defined victims. *Id.* at 720, 766 S.E.2d at 334 ("The [Tennessee] offense thus requires that the person being assaulted fall within at least one of these six enumerated categories of domestic relationships. The offense does not require the victim to be female or the assailant to be male and of a certain age.").

Here, unlike in *Sanders*, the elements of carjacking and common law robbery require similar conduct, and no elements are mutually exclusive. Both offenses share two essential elements: (1) there is a non-consensual taking and theft of property; and (2) the taking is accompanied by force, violence, fear, or intimidation. 18 U.S.C. § 2119; *Porter*, 198 N.C. App. at 186, 679 S.E.2d at 169-70. When a victim is being dispossessed of property, use of intimidation and force invoke violence or fear, which are requirements of both offenses. It is hard to envision the lack of presence or occurrence of any or all factors in the commission of either crime.

### 2.  *Interstate Commerce Requirement*

Defendant next argues carjacking and common law robbery are not substantially similar because the federal carjacking offense requires the stolen property be connected to interstate commerce. North Carolina's common law larceny does not contain an interstate commerce requirement, as that element invokes federal jurisdiction.

The State relies on the analysis in *State v. Graham* in arguing the elements of carjacking and North Carolina common law robbery are substantially similar. *State v. Graham*, 379 N.C. 75, 863 S.E.2d 752 (2021). The defendant in *Graham*, like the Defendant in the present case, argued "if the difference between the two statutes renders the other state's law narrower or broader, 'or if there are differences that work in both directions, so that each statute includes conduct not covered by the other, then the two statutes will not be substantially similar[.]'" *Id.* at 81, 863 S.E.2d at 756. Our Supreme Court found this argument unpersuasive and concluded the defendant's position "conflates the requirement that statutes subject to comparison be substantially similar to one other with [the] erroneous perception that the two statutes must have identicalness to each other." *Id.* at 82, 863 S.E.2d at 756.

The Court further concluded "substantially similar" does not mean "literalness," "identicalness," or "exactitude." *Id.* The Court explained:

> Standing alone, neither word—"substantially" or "similar" —connotes literalness; therefore, when these words are combined to create the legal term of art "substantially similar," this chosen phraseology reinforces the lack of a requirement for the statutory language in one enactment to be the same as the statutory language in another enactment in order for the two laws to be treated as "substantially similar." Yet, the dissent here—despite the obvious essential pertinent parallels between the Georgia statute and the North Carolina statute—would withhold a recognition that the two statutes are substantially similar because *all* of the same provisions are not common to each of them. In this respect, although the dissent professes that it understands the difference between "substantially similar" and identicalness, nonetheless it appears that the

- 12 -

> dissent is so ensnared and engulfed by a need to see a
> mirrored reflection mutually cast between the two statutes
> that the dissent is compelled to promote this erroneously
> expansive approach.

*Id.* at 82-83, 863 S.E.2d at 756-57.

This Court in *State v. Riley* compared N.C. Gen. Stat. § 14-415.1(a), which criminalizes possession of a firearm by a felon, with its federal counterpart, 18 U.S.C. § 922(g)(1). *State v. Riley*, 253 N.C. App. 819, 820, 802 S.E.2d 494, 495-96 (2017). North Carolina's offense of possession of a firearm by a felon "requires proof that (1) the defendant had been convicted of a felony and (2) thereafter possessed (3) a firearm." *Id.* at 825, 802 S.E.2d at 499  The federal statute, codified in 18 U.S.C. § 922(g)(1), "requires proof that (1) the defendant had been convicted of a crime punishable by more than one year in prison, (2) the defendant possessed (3) a firearm, and (4) the possession was in or affecting commerce." *Id.* at 825, 802 S.E.2d at 498-99.

This Court held the statutes are substantially similar, even though the federal law contains the additional element requiring possession of the firearm "in or affecting commerce" to invoke federal jurisdiction. *Id.* at 825-27, 802 S.E.2d at 498-500.  Here, as in *Riley*, Defendant's argument asserting the additional element of interstate commerce distinguishes the crimes fails. *Id.*

### 3. *Sentencing Requirements*

Defendant argues the sentencing enhancements in the federal carjacking

statute, which are not present in North Carolina common law robbery, require this Court to hold the two offenses are not substantially similar. *Compare* 18 U.S.C. § 2119(1)-(3) *with Porter*, 198 N.C. App. at 186, 679 S.E.2d at 169-70.

The defendant in *Riley* argued the federal offense of being a felon in possession of a firearm was not substantially similar to the North Carolina offense of possession of a firearm by a felon based upon the sentencing disparities between the two offenses. *Riley*, 253 N.C. App. at 826, 802 S.E.2d at 499. The federal offense required the person to have been previously convicted of a crime "punishable by imprisonment for a term exceeding one year," whereas the North Carolina offense required the person to have previously been "convicted of a felony." *Id.* (internal quotations omitted). Notwithstanding those differences, the Court found substantial similarity existed between the two crimes:

> There may be other hypothetical scenarios which highlight the more nuanced differences between the two offenses. But the subtle distinctions do not override the almost inescapable conclusion that both offenses criminalize essentially the same conduct—the possession of firearms by disqualified felons. Both statutes remained unchanged in the 2012 to 2015 time period, and despite the differences we have discussed, the federal offense of being a felon in possession of a firearm is substantially similar to the North Carolina offense of possession of a firearm by a felon, a Class G felony.

*Id.* at 827, 802 S.E.2d at 500.

Similarly, in *Graham*, the defendant argued the North Carolina and Georgia offenses for statutory rape were not substantially similar because of how the two

statutes treated "the age difference between the two participants." *Graham*, 379 N.C. at 81, 863 S.E.2d at 755. The Georgia statute provided different punishment ranges depending on the age of the offender and the age of the victim, "which impact[ed] the perpetrator's degree of punishment." *Id.* (explaining the Georgia statute provided "'[a] person convicted of the offense of statutory rape shall be punished by imprisonment for not less than one nor more than 20 years; provided, however, that if the person so convicted is 21 years of age or older, such person shall be punished by imprisonment for not less than ten nor more than 20 years; provided, further, that if the victim is 14 or 15 years of age and the person so convicted is no more than three years older than the victim, such person shall be guilty of a misdemeanor'"). The North Carolina statute differentiated between the class of felony an offender could be punished under, depending on the age of the victim, the age of the offender, and the disparity between the victim's and the offender's ages. *Id.* at 81, 863 S.E.2d at 755-56.

Our Supreme Court held "the statutory wording of the Georgia provision and the North Carolina provision do not need to precisely match in order to be deemed to be substantially similar." *Id.* at 82, 863 S.E.2d at 756. The test in *Sanders* does not "require identicalness between compared statutes from different states and mandate identical outcomes between cases which originate both in North Carolina and in the foreign state." *Id.* at 84, 863 S.E.2d at 757.

Here, the offenses are substantially similar, despite the sentencing

enhancements present in the federal carjacking statute, which are not present in North Carolina common law robbery. *Id.*; *Riley*, 253 N.C. App. at 825-27, 802 S.E.2d at 498-500; 18 U.S.C. § 2119; *Porter*, 198 N.C. App. at 186, 679 S.E.2d at 169-70. Defendant's objection and argument is overruled.

### 4. *Broader Scope*

Defendant finally argues the two offenses are not substantially similar because the scope of North Carolina common law robbery is broader than the federal carjacking offense. He asserts the common law offense of larceny involves the violent taking of any property, while federal carjacking is limited to forcible theft of a motor vehicle.

In *State v. Key*, this Court found an out-of-state statute was substantially similar to a North Carolina common law offense, despite the absence of an intent element in the sister-state's statute. *State v. Key*, 180 N.C. App. 286, 293-96, 636 S.E.2d 816, 822-23 (2006). The common law offense in North Carolina required the offender to have intended "to deprive the owner of his property permanently." *Id.* at 294, 636 S.E.2d at 823 (citation and internal quotation marks omitted). Both the Maryland statute and North Carolina common law larceny focused on "the perpetrator placing the property under his control and depriving the owner of control over it." *Id.* at 294, 636 S.E.2d at 823. Because the two offenses had similar elements with respect to taking the property, this Court held the two offenses were substantially similar. *Id.*

Here, both the federal carjacking statute and North Carolina common law robbery require a non-consensual taking of property under threat, force, or intimidation. 18 U.S.C. § 2119; *Porter*, 198 N.C. App. at 186, 679 S.E.2d at 169-70. Following the reasoning in *Key*, Defendant's argument that common law robbery and the carjacking statute are not substantially similar, because the scope of common law robbery is broader, fails and is overruled. *Key*, 180 N.C. App. at 293-95, 636 S.E.2d at 822-23.

## IV. Conclusion

The trial court properly concluded federal carjacking is a substantially similar offense to the North Carolina offense of common law robbery, a Class G Felony. Defendant was sentenced as a Habitual Felon at the proper prior record level and has not demonstrated error by the trial court's classification to warrant re-sentencing.

Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal. We find no error in the jury's verdict or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges Hampson and Carpenter concur.